JANE E. MERRILL, Respondent, v. THE AGRICULTURAL INSURANCE COMPANY, Appellant.

In answer to the following question in an application for fire insurance, "What is your title to or interest in the property?" the answer was, "Deed." *Held*, that this was not a warranty that the applicant had a grant in fee of a freehold estate; but, if she had an interest in the land based primarily upon a deed, or some title derived from a deed, there was no breach.

Where a mortgage has been paid in full, the fact that it is not discharged of record does not constitute a breach of warranty against incumbrances in a policy of fire insurance.

Where, by a policy upon several separate and distinct classes or species of property, each of which is separately valued, the sum total of the valuations is insured on payment of a premium in gross, the contract is severable; and a breach of a condition avoiding the policy as to one of the items does not affect it as to the others; at least when there is nothing in the terms, in the nature of the contract or of the different subjects of the insurance, or in the surrounding circumstances, from which it can be inferred that the insurer would not have been likely to have assumed the risk on one or several of the subjects of the insurance, unless induced by the profit or advantage of having a risk upon all.

(Argued April 2, 1878; decided May 21, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 10 Hun, 423.)

This action was upon a policy of fire insurance. The policy was issued in April, 1873. It insured the plaintiff as follows: "Against loss or damage by fire or lightning, to the amount of $6,000, on the following property, as described in the application and survey, bearing even date herewith, and which is hereby referred to as forming part of this policy, viz.:

$1,000 on dwelling-house and wood-house, if attached.

    300 on household furniture therein.

    200 on provisions and wearing apparel therein.

          on bound books, pictures and silverplate.

          on pianoforte therein.

$200 on wood-house.

600 on barn No. 1—horse barn.

300 on produce therein and feed.

300 on barn No. 2.

300 on produce therein.

200 on corn barn No. 2.

300 on produce therein.

100 on farming utensils in said barns.

400 on wagons, harness and mowing machine therein.

900 on horses, not to exceed $150 on each horse.

900 on cows, not to exceed $50 on each cow.

$6,000 total."

The policy contained a condition that, if the property insured was incumbered by mortgage or otherwise, unless so represented in the application, the policy should be void ; also, if it should become incumbered by mortgage, judgment or otherwise, the policy should be void until the written consent of the company was obtained.

In the application, which was made part of the policy, and its statements declared to be warranties, was the following question and answer : " What is your title to or interest in the property ?    Deed."

The premises upon which the buildings were situated were deeded to plaintiff by William Cooper in 1863.  She entered into possession at the time, and continued in possession up to the time of the trial.  She executed two mortgages upon the premises, which, prior to the issuing of the policy, were foreclosed, the premises sold and bid off by Cooper.  It was thereafter agreed between plaintiff and Cooper that, upon her paying the amount of the mortgages, interest and costs to Cooper's attorney, he would reconvey the premises to her.  She made the payment, and, at the time of the issuing the policy, an action was pending, brought by plaintiff against Cooper to compel him to convey as agreed, which action was thereafter decided in plaintiff's favor.  Plaintiff, subsequent to the issuing of the policy, executed two mortgages upon the

premises; no written consent of the company having been obtained. Barns numbered two and three in the policy, with produce therein, and other articles of personal property insured, were destroyed by fire. The trial court held that the policy was void as to the insurance upon the buildings, because of the subsequent mortgages, but valid as to the personal property; to which last the defendant's counsel duly excepted.

*Bradley Winslow*, for appellant. The policy having, by the subsequent incumbrances, been rendered void as to the building, was void as to all the property insured, though separately appraised. (May on Ins., § 277; Wood on F. Ins., § 152; *Friesmuth* v. *Agawam Mut. F. Ins. Co.*, 10 Cush., ·; ·*Brown* v. *People's Mut. Ins. Co.*, 11 id., 280; *Wilson* v. *Herk. Co. Mut. Ins. Co.*, 6 N. Y., 53; *Whitwell* v. *Put. F. Ins. Co.*, 6 Lans., 166; *Smith* v. *Empire Ins. Co.*, 25 Barb., 497; *French* v. *Chenango Co. Mut. Ins. Co.*, 7 Hill, 122; *F. and D. Ins. Co.* v. *Curry*, 5 N. Y. W. Dig., 334; *Sarsfield* v. *Met. Ins. Co.*, 42 How., 97; *LeRoy* v. *Market F. Ins. Co.*, 39 N. Y., 90; 45 id., 80; *Ripley* v. *Ætna Ins. Co.*, 30 id., 136; *Pierce* v. *Empire Ins. Co.*, 62 Barb., 636; *Shoemaker* v. *G. F. Ins. Co.*, 60 id., 84; *Barnes* v. *Un. Mut. F. Ins. Co.*, 51 Me., 110; *Lovejoy* v. *Augusta Mut. F. Ins. Co.*, 45 id., 472; *Gattsman* v. *Penn. Ins. Co.*, 56 Penn. St., 210; *Bowman* v. *Franklin F. Ins. Co.*, 40 Md., 620; *Hinman* v. *Hartf. F. Ins. Co.*, 36 Wis., 159; *Ass't'd Firemens Ins. Co.* v. *Assum*, 5 Md., 165; *Egan* v. *Mut. Ins. Co.*, 5 Den., 326; *Savage* v. *How. Ins. Co.*, 52 N. Y., 502; *Abbott* v. *Hamp. Mut. F. Ins. Co.*, 30 Me., 414; *Germond* v. *Home Ins. Co.*, 2 Hun, 540; *Lappen* v. *C. O. F. and Mut. Ins. Co.*, 58 Barb., — ; *Lee* v. *How. F. Ins. Co.*, 3 Gray [Mass.], 583; *Kimball* v. *How. F. Ins. Co.*, 8 id., 33; *Ritt* v. *Wash. Mar. and F. Ins. Co.*, 41 Barb., 353; 1 Phil. on Ins., §§ 541, 542; Pars. on Mer. Law, 430.) The policy was rendered void by the warranty of the insured that she held the property under a deed. (*Jennings* v. *Chenango Mut. Ins. Co.*, 2 Den., 75;

*Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 136; *Shoemaker* v. *Glen's Falls Ins. Co.*, 60 Barb., 84; *Sarsfield* v. *Mut. Ins. Co.*, 42 How., 97; *LeRoy* v. *Market F. Ins. Co.*, 37 N. Y., 90 ; 45 id., 80; *Birmingham* v. *Empire Ins. Co.*, 42 Barb., 457; *Pierce* v. *Empire Ins. Co.*, 62 id., 336; *Stellwagon* v. *Merch. Life Ins. Co.*, 6 Hun, 654.)

*Nicholas E. Kernan*, for respondent.   Plaintiff's answer that she held the property to be insured by deed was not a misrepresentation. , (*Moore* v. *Burrows*, 34 Barb., 173–174; *Griffiths* v. *Beecher*, 10 id., 432; *Hathaway* v. *Payne*, 34 N. Y., 92, 103; *Paine* v. *Miller*, 6 Ves. Jr., 349; *Chadwick* v. *Fonner*, 6 Hun, 543; *Cavalli* v. *Allen*, 57 N. Y., 517; *First Nat. Bk.* v. *Hartf. F. Ins. Co.*, Alb. L. J., Feb. 23, 1878, p. 153; *Fowle* v. *Springf. Ins. Co.*, 122 Mass., 191; *Dohn* v. *F. J. S. Ins. Co.*, 5 Lans., 275.)   Mortgages upon real estate do not invalidate an insurance policy as to personal property theirein separately insured.   (*Deidericks* v. *Com'l Ins. Co.*, 10 J. R., 233–235; *French* v. *Chenango Co. Mut. Ins. Co.*, 7 Hill, 122, 125; *Burrill* v. *Chenango Co. Mut. Ins. Co.*, 1 Edm's Sel. Cas., 233; *Heacock* v. *Sar. Mut. F. Ins. Co.*, Ct. App., Mch., 1856.)   The alienation of one of several estates separately insured by the same policy avoids the policy only as to the estate alienated.   (Flanders on F. Ins., 425; Ang. on F. and L. Ins., § 193; Emerigon on Ins., by Meredith, 235; *Hartf. F. Ins. Co.* v. *Walsh*, 54 Ill., 164; *Lochner* v. *Howe Mut. Ins. Co.*, 17 Mo., 247; 19 id., 628; *Koontz* v. *Han. Svgs. and Ins. Co.*, 42 id., 126; *Date* v. *G. D. Mut. F. Ins. Co.*, 14 Up. Can. C. P., 502, 540.)

FOLGER, J.   One of the points presented for a reversal of judgment, is, that the plaintiff made a warranty to the defendant that she had a grant in fee of a freehold estate in the buildings.   This contention arises upon a question and an answer in the application for insurance.   The question was, "What is your title to, or interest in, the property?" The answer was in a single word, "deed."   It is claimed

that this answer imported that she possessed an unqualified grant in fee of a freehold estate. We do not think that the single word " deed," thus used, must, of necessity, have that meaning alone. In the first place, the question put does not ask only as to the legal title. It is in the alternative, and asks as to the title, or as to an interest. It imports a distinction of meaning in the two words. It plainly indicates that a title is something greater and more certain than an interest, as it sometimes is. A title is a lawful cause or ground for possessing that which is ours. (Co. Litt., 345 *b*, \*155.) An interest, though primarily it included the terms estate, right and title (Co. Litt., 345 *b*, \*155), has latterly come often to mean less, and to be the same as concern, share and the like. (*Inhabitants of Northampton* v. *Smith*, 11 Metc., 390.) Clearly it meant less in this question in the application. There is no reason, why we are bound to take the answer, as made in reply to the part of the question which asked of the title, rather than to the part which asked of an interest. Rather, to save a loss of rights by forfeiture, or lapse in the nature thereof, we may take the question and answer as will be most favorable to the party in danger of a loss of rights. If then there was no interest in land capable of creation by deed, or capable of resulting from the taking of a deed, save that suggested by the appellant, it may be that the plaintiff would be held to have declared by the use of that word that her interest in the premises was to that extent. That she had an interest in the premises at the time is not disputed ; that it had its origin in a deed to her, and was still based primarily upon that deed, is not disputed. Whatever the limit of that interest, or however complicated, it grew from a deed. It would not have been false then, either in words or in substance, to have said that her interest was " *by deed*," which phrase is the natural and obvious meaning of the use of the single word " *deed*," in answer to the question put in the application. Again, if the question and answer be applied to an inquiry for the title, rather than, or as well as, the interest, the answer is not false. The answer by the word deed,

alone, is elliptical in meaning.  It could not have been under-
stood to have meant other than that she had a title by deed.
That she had some title to the premises at the time, the facts
of the case fully disclose, and that whatever it was it came
to her in its inception by deed.  If an instrument had been
framed expressly to create and lodge in her just the title and
interest in the premises which, it appears from the record,
she then had, and which would have been effectual therefor,
it would not have been improperly called a deed.  It
was not then a breach of a warranty that she had title by
deed, that the relations existed between the plaintiff and
Cooper which appeared upon the trial.

It does not appear, nor is any claim made, that the defend-
ant or its agent was purposely misled by the plaintiff or her
agent.  It is simply a question whether there was a breach
of a warranty committed in fact, but without design.  If the
answer had stated an untruth, there would have been such a
breach.  To make it untrue it is necessary to restrict the
single word of the answer, to one of many meanings which
it has when used as a single word, and besides that to shut
out the elliptical meaning with which it was evidently
charged.  This we are not called upon to do.

Another point made, is, that the plaintiff warranted that
there was no incumbrance upon the premises at the time of
the insurance.  She did so warrant.  It is true that she had
made before that two mortgages to Cooper which were
not discharged of record, and had been foreclosed, sale had
and judgment for deficiency entered.  But the amount of
them all had been actually paid to, and received by, the
attorney and agent of Cooper.  Thus they were in fact
and legally extinguished, and did not exist as incumbrances
upon the premises, though not technically discharged on
the record.  The payment was after that approved and
enforced as an extinguishment, by the court.  There is not
in the facts disclosed, a legal reason why the defendants should
not, in this respect, be held to the performance of their con-
tract.

\*     \*     \*     \*     \*     \*

The next contention of the defendant is this : That by the giving of some mortgages upon the lands, after the issuing of the policy of insurance, the policy was made void. The condition in the policy is, that if the property insured should become incumbered by mortgage, judgment, or otherwise, the policy should be null and void until the written consent of the defendant at its home office was obtained.

The policy was issued upon buildings and upon chattel property in them. Some part of both were burned. The trial court ruled that by reason of the mortgages given after the risk was taken, the condition became operative, so far that the plaintiff could not recover for her loss by the destruction of the buildings, but that she might recover, notwithstanding that condition, for the chattels lost.

It is claimed by the defendant, that not only was the policy avoided as to the buildings insured, but as to the chattel property as well. This depends upon whether the contract was entire or severable ; whether a condition admitted to have been broken as to a part of the whole subject of insurance, was thereby broken as to each subject of insurance.

It has become the law of the case, by the ruling at the circuit, that by the subsequent incumbrance upon the land and the buildings, the policy became null and void as to the insurance effected upon the latter. But it was held that the policy was a severable contract, and remained in force as to the chattel property. The whole contract of the parties is contained in one written and printed instrument. So that physically, and so far as the material expression and embodiment of it is concerned, it is one entire contract not severable. Whether it is severable in law, depends upon the rules which have been laid down, and their application to the facts in the case. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, such a contract will be generally held to be severable. Thus where one had bought and paid for two distinct pieces of

land, a fixed and separate sum for each, and was evicted from one while he remained in possession of the other undisturbed, it was held that he might recover for the loss of the one, on the ground that the bargain for the land consisted of two distinct contracts. (*Johnson* v. *Johnson*, 3 B. & P., 162; see, also, *Mayfield* v. *Wadsley*, 3 B. & C., 357.) The idea that there is a distinct price to be paid for each item, seems, when it is present, to be a controlling element in the contract, to make it severable. (*Robinson* v. *Green*, 3 Met., 159.) It was there said, that if there was an express promise to pay a fixed sum as a compensation for the entire sale, a different question would have been presented; and that where an entire promise is made on one entire consideration, and part of that consideration is illegal, it may avoid the entire contract. (See, also, *Carleton* v. *Woods*, 8 Foster [N. H.], 290. In *Miner* v. *Bradley* (22 Pick., 457), the distinction is presented, between a contract for several articles for a gross sum, and a contract for several articles for a different price for each; the first being an entire and indivisible contract, and the latter a severable contract. The reason of the rule is this: That in the contracts thus held to be entire, no means are afforded by their terms, by which the value at which any portion was estimated by either party can be ascertained; and also that their terms do not indicate that either party ever contemplated taking any portion without taking the whole. The entirety, therefore, may be, and in fact legally is, the only express consideration. (Story on Sales, § 240.)

When these rules have come to be applied to a contract for insurance on different pieces of property, there has been a contrariety of opinion. It seems to be conceded in general terms that, where the contract is entire, a breach of condition affects all the property at risk; but as to what makes an entire contract there is not uniformity of ideas. Thus it has been held that a policy of insurance on a house and the furniture therein, though they were separately valued, was an entire contract. (*Barnes* v. *Union Mut. Fire Ins. Co.*,

51 Maine, 110, and cases there cited.)   So in *Friesmuth* v. *Agawam Mut. Fire Ins. Co.* (10 Cush., 587), a policy upon different properties, separately valued, but for a gross premium was held an entire contract; though some stress was laid upon the fact that there was a premium note which was a lien upon all the kinds of property.   In *Trustees Fire Ass'n.* v. *Williamson* (26 Penn. St., 196) three buildings insured in one policy were separately valued, yet a breach of a condition by a prohibited use of one, was held to avoid the policy as to all, because the contract was entire.   On the other hand, in *Loehner* v. *Home Mut. Ins. Co.* (17 Mo., 247, and 19 Mo., 628), it was held that a misrepresentation as to the title or character of a house, where it and furniture were insured by one policy, did not avoid the policy as to the furniture.   To the same effect are *Phœnix Ins. Co.* v. *Lawrence* (4 Met. [Ky.], 9, and *Clark* v. *New Eng. Ins. Co.*, 6 Cush., 342, and *Hartford Ins. Co.* v. *Walsh*, 54 Ill., 164; *Koontz* v. *Hannibal Savings and Ins. Co.*, 42 Mo., 126; *Date* v. *Ins. Co.*, 14 Up. Can. Com. Pl., 548.)

In such case, we must learn whether there are adjudications in our own State authorative upon us, or to what conclusion the reason of the case will lead us.   The earliest case in this State to which our attention has been called is *Deidericks* v. *Com. Ins. Co.* (10 J. R., 233), which arose on a marine policy on different kinds of cargo separately valued, but insured for a premium paid in gross.   It was held that there might be an abandonment of one of the kinds of cargo without an abandonment of the others.   There is no distinct enunciation of the principle upon which the decision was put, though the idea seems to be, that the contract of insurance was rendered serverable by the fact of a separate valuation on each kind of goods.   The earlier text-writers were relied upon, and the result not reached without hesitation. The opinion is by Kent, Ch. J., who afterwards in his commentaries (vol. 3, p. *330), has stated the rule in a cautious manner, thus : " Unless the different sorts of cargo be so distinctly separated and considered in the policy, as to make

it analogous to distinct insurances on distinct parcels, there cannot be a separate abandonment of a part of the cargo insured." And it is to be observed that in the case cited (10 J. R., *supra*), he puts his conclusion thus carefully, saying : "There is nothing *very unreasonable* in this doctrine, and upon the sanction of such authority, and in the absence of authority to the contrary, the court do not feel themselves at liberty to reject it." Yet it is an adjudication, at least tending to the result, that a separate valuation of different subjects of insurance makes the contract of insurance severable. *Trench* v. *Chen. Mutual Insurance Company* (7 Hill, 122) was a case of an insurance by one policy, on buildings and on machinery and stock therein, each kind of property being separately valued, but the premium being, so far as appears, a gross sum. There was a condition that the application should state the relative situation of the property to *other buildings*, and distance from each, if less than ten rods. This condition was not complied with. It was held that the condition was applicable only to the building insured, and not to the machinery and stock therein, and plaintiffs were allowed to recover for the property insured other than the buildings. There was no discussion whether the contract was entire or severable. The ground of decision was solely that the condition did not contemplate or apply to property other than buildings. *Wilson* v. *Herkimer County Mutual Insurance Company* (6 N. Y., 53) was a policy with the same condition as in the case last cited, and there was the same breach of it. It was on chattel property alone, in a building. It was distinctly held that there is no difference between personal and real property in the application of such a condition, and that by the breach of the condition the policy was avoided. This case must be considered as practically overruling that in 7 Hill (*supra*). But it does not proceed upon the ground of the entirety of the contract so much as upon the consideration that the exposure, and hence the risk, by the nearness of other buildings, was as great to chattels in a building

as to the building itself. In *Chaffee* v. *Cattaraugus County Mutual Insurance Company* (18 N. Y., 376), the opportunity was presented of making the distinction taken in 7 Hill (*supra*), between real and personal property. Both that case and that from 6 N. Y. (*supra*) are cited, but the distinction is no where mentioned or suggested. Another case, unreported, of more importance to the matter in hand, is brought to our attention. It is *Heacock* v. *Saratoga Mutual Fire Insurance Company*, decided in this court September 27, 1856. There, was a policy on a factory and machinery therein, valued separately at $750 each. The insured did not have the legal title to the real estate. He was permitted at the circuit to recover for the machinery, though it was objected that as he had no title to the real estate the policy was void as to that, by reason of a general clause in it, which it was conceded had that effect; and that being void in part it was void in whole. But this court upheld the recovery, saying, that the defendants had neither the letter of the law nor its spirit in their favor; that a policy on merchandize is quite different from a policy on a house; that if two houses are insured, whether in one or two instruments, there is a policy of insurance on each house, (which is tantamount to declaring that a contract of insurance covering two houses is a severable contract); that if there is an insurance of but one thing, then the avoiding of the insurance as to that one thing avoids the whole instrument; but this is not the case where more than one subject is insured, whether in the same or in different instruments. Though there were distinct rates and amounts of premium for the insurance on the different kinds of property, that fact, though noted by the court, does not seem to have controlled its judgment; while stress is put upon the other fact that the insurance was for separate sums, " thus showing that the application was for two distinct insurances, one on the factory for a separate sum and one on the machinery for another and a separate sum." Indeed, the whole reasoning of the opinion, upon several clauses of the policy, is, that it was the intention of the par-

ties to it to treat it as a severable contract as to the separate properties named in it. These are all of the authorities in this State, binding upon us, which have come to our notice. In the Supreme Court, since 1847, there have been several decisions that a policy upon different properties, rendered void as to one of them, becomes void as to all; but they do not notice the cases above cited, (that from 10 J. R., and that unreported in this court); nor is there in any of them extended discussion given to the question, and the adjudications in other States seem to have led to the results reached. We will follow the case in 10 J. R., and that in this court, not only on the ground that they are authoritative, but that they are reasonable.

It is plain from the fact of a separate valuation having been put by the parties upon the different subjects of the insurance, that they looked upon them as distinct matters of contract. The effect of the separate valuation was to make them so. No matter how much value there might have been in any one of those subjects, even to the whole amount of the policy; had it been totally destroyed, the defendants could not have been made liable to an amount greater than that named in the policy as the valuation of it. Thus it was, at the inception of the contract, distinguished from the other subjects of insurance, and the contract so made as to be capable of application to it alone. So too, if but one of the subjects of insurance had been burned, the defendants, (*ceteris paribus*), could not have avoided liability to pay for that, up to the value put upon it; and if not wholly destroyed, but so far damaged as to reach in deterioration the value put upon it in the policy, the defendants would have to pay that damage; and that subject would no longer form a part of the general matter insured, and hence not a part of the continuing contract. Thus, there would of necessity be a severance of the contract, worked out by the operation of its own terms. Again; the principle, in the case of a contract about several things, but with a single consideration in gross, is this, that we are not able to say that the

party would have agreed for one, or for more than one yet
less than all of them, without he could at the same time
acquire a right to have them all.    But our daily experience
and observation shows that an insurance company is as ready
to insure buildings without insuring the contents, and the
contents without insuring the buildings, as to insure them
together ; so that that principle does not press so hard in con-
sidering such a contract as that before us.    Besides; it is a
rule that an agreement embracing several particulars, though
made at one time and about one affair, may yet have the
nature and operation of several different contracts ; as when
they admit of being separately executed and closed, as we
have instanced just above, when the contract may be taken
distributively, each subject being considered as forming the
matter of a separate agreement after it is so closed ; *per
Washington J. Perkins* v. *Hart* (11 Wheat., 237–251);
*Rodemer* v. *Hazlehurst* (9 Gill., 294).    In our judgment
this rule applies fitly to the contract in hand.    It admits of
being separately executed and closed as to each of the sepa-
rate subjects of insurance.    When one species of the property
insured is burned, the contract to insure as to that may be
performed as to that alone.    The insured has paid the pre-
mium.    A fire doing damage to that subject, that damage
may be paid for by the insurer, and that subject be thus put
out of the contract, while it remains *in fieri* as to all the
other subjects named in it.    When there are several subjects
of insurance (as there are fourteen here) separately valued, on
which a gross sum is insured not exceeding the aggregate
of that valuation, for the insurance of which a premium in
gross is paid, it is easy to see what is the rate of premium on
the whole valuation, and what is the amount of premium on
each subject insured. . This being so, it seems fanciful to say,
that if the facts thus easily reached were stated in detail in
the contract it would be severable, while not being specific-
ally spread out it is entire.    If there were anything in the
terms or nature of the particular contract, or in the circum-
stances of the case, or in the nature of the different subjects

of the insurance, from which it was to be inferred that the insurer would not have been likely to have assumed the risk on one or several of them, unless induced by the advantage and profit of having a risk on all, that would be a rational cause for deeming the contract entire. But when for aught that appears, when indeed it is as likely that, the insurer would have taken a risk upon any one, or any few, of the subjects insured, at the same rate of premium as upon the whole, and has in the policy so separated the subjects, and so singled them out by a specific valuation, as that there is no difficulty in distinguishing one of the subjects from the rest, and closing the contract as to that separately, and carrying forward the contract as to the rest, it does result that the contract is severable in practical operation and hence in law. And so also, that, though there may have been some conduct of the insured as to some of the property, not evil in itself, but working a breach of a condition in its letter, the effect of that breach may be confined to the insurance upon that property, the contract as to that be held avoided, and as to the other subjects held valid.

There is another rule, that in construing the consideration as entire or distributed, the law will be guided by a respect to general convenience and equity, and by the good sense and reasonableness of the particular case; for it must be supposed that it was the intention of the parties that such construction should take place, in the occurrence of contingencies not contemplated and provided for at the making of the contract. (*Brown* v. *Vinal*, 3 Metc., 533.) Without stating this rule in terms, the argument of the opinion in *Heacock* v. *Saratoga Ins. Co.* (*supra*), is the expanded expression of the logic of it. That opinion is much occupied, with a consideration of different conditions in the policy there, and a demonstration of the inapplicability of them to the case of the machinery, though applicable to the case of the building.

Now let us lay this rule by the side of the facts, in the case in hand. It is claimed that the plaintiff has not kept

the conditions of the contract. The breach alleged is that she has put or suffered incumbrances upon the property insured. She has, as to the buildings insured; she has not, as to the chattels insured. Perhaps the condition is literally broken by an incumbrance upon the buildings. But as was said in *Heacock's Case* (*supra*) as to similar conditions; the intention of both parties is effected by construing the phrase in the contract, "then this policy shall be null and void," as attaching to the property so severally situated, as to come within the force of the condition, and thus treating the insurances as separate on each property. This mode of reading various phrases in the policy must also be adopted to do justice to the insurers in contingencies that might arise. Thus, there is the general statement in it, that the defendants insure the plaintiff to the amount of $6,000 on the property named in it and described in the application and survey; and the defendants agree to make good to the plaintiff all damages, not exceeding in amount the sum insured, as shall happen to the property specified. It would not be correct construction to hold the defendants to pay up to the sum of $6,000, if a subject of the insurance worth that amount, but separately valued at a less sum, was damaged; for the reason, that the fact of a separate valuation being expressed in writing in the contract explains the general language of the printed part of the policy, and shows the intention of the parties to have been otherwise. So the same expression in writing explains the general printed conditions, and limits the effect of them to the species of property insured, which has in fact, by the act of the insured, been brought within the scope of any condition. Similar to this is the application of a statute declaring void certain transactions. If it expressly declares an entire conveyance void which has in it one element by the terms of the statute inoperative, then all is void, for the Legislature has chosen to make it so, but it is not on any other principle of law; per COMSTOCK, J., *Curtis* v. *Leavitt* (15 N. Y., 123). If a deed is made with some evil intent, whether such intent is

denounced by the common law, or by a statute, then it is true that the whole is void, for it is pervaded by a single vice. (Id.) But a particular provision may be simply void or inoperative by the common law or by statute, and all the others good. (Id.) Now, what is there in the circumstances of this case which should lead us to the conclusion that the parties intended that an after incumbrance put upon the buildings should avoid the contract *in toto?* There is nothing to show that an incumbrance upon the buildings would have been an objection to a risk on the chattel property; or that the opportunity of insuring on the buildings was the inducement to taking a risk also on the chattels. There is nothing in the nature or terms of the contract which makes it so much an entirety, as that it is at all difficult to tell the amount insured on the buildings, as distinguished from that at risk upon the chattels. There is nothing to show that had the chattels been insured, without insuring the buildings, the premium would have been greater or different. The risks are not necessarily indivisible, they may be dealt with in separate clauses, and are made up of distinct and independent sums on different and distinct properties. There may be reasons which, existing as to one class of the property insured, might deter an insurance company from taking a risk on any of the classes. Some such general cause, as fraud in the insured as to one class, would, in its nature, extend to the whole subject-matter of the contract, and vitiate and avoid the whole contract in all its parts. But it is difficult to conceive how an act, in itself not evil, though it may affect one of the classes of property insured, and so affect it as to increase the hazard, if it does not also increase the hazard on another class, should operate so as to impair the contract as to that latter class. The principle of human nature, upon which the insurance company acts when it makes a condition, that it shall be no longer bound to a risk upon buildings, after the insured has incumbered them, is, that the insured has not then so strong a selfish interest to keep fire from them. But if the chattels of the insured kept

in those buildings are not also incumbered, that principle does not work as to them. So the reason for the imposition of the condition is not then present. Why then should it be held that such a condition in a policy of insurance, susceptible of being severed and separately appropriated to a class of the whole subject-matter of insurance, should, notwithstanding, be arbitrarily applied to other class of this subject-matter not within its provision and purpose?

These considerations lead us to the conclusion that the contract of insurance before us is not entire; that it is divisible; and that the breach of the condition made by the plaintiff applied only to the class of property insured, which was the immediate subject of the act of incumbrance which constituted that breach.

It follows that the judgment appealed from should be affirmed.

All concur, except MILLER, J., absent.

Judgment affirmed.