CATHARINE DACEY, RESPONDENT, *v.* THE AGRICULTURAL INSURANCE COMPANY, OF WATERTOWN, N. Y., APPELLANT.

*Application for a policy of insurance—what does not amount to an answer of a question in—when the applicant's title may be said to be by deed—when an answer as to the value of the land is deemed an expression of an opinion—when the company is estopped from setting up a breach of warranty—when a policy is avoided by the giving of a mortgage thereon—damages for the loss of any article cannot exceed the amount for which it was specifically insured.*

The plaintiff applied for a policy of insurance against fire, upon certain buildings and certain articles of personal property therein. The buildings were situated upon land conveyed, by deed, to her husband, after her marriage, and which he had devised to her by his will. The application contained the following question, viz.: "What is your title to or interest in the property?" An agent of the company, who filled in the application, wrote opposite to this the word "Deed." The policy provided that all statements contained in the application should be deemed warrantees. Upon the trial of this action, brought to recover upon the policy, the company claimed that the answer was false, and that the policy was thereby avoided.

*Held*, that there was no breach of warranty, because—

(1.) The word "deed" was not an answer to the question.

(2.) That as the plaintiff had an inchoate right of dower in the premises during the life of her husband, which became perfected by his death, and as such interest, and all her husband's interest, were acquired by deed, it might be said, in a general sense, that the plaintiff's title or interest was by "deed."

The application stated that the insurance on a dwelling-house and woodhouse was to be $400, and that it was worth $600; that the insurance on a barn was to be $250, and that it was worth $400. The application contained the following question: "What is the value of the land and building?" Opposite to it was written "$3,000." The agent who filled in the application certified that he had examined the risk, and recommended its acceptance. Upon the trial it was shown that the dwelling-house and barn were of the value stated, but that the building and land were worth but $1,500 at the time the policy was issued.

*Held*, that the policy was not thereby avoided, and that the statement of the assured as to the value of the land was to be taken as a mere statement of opinion, an error in which could not affect the company, as it was the building, not the land, which was to be insured.

That, in any event, the company was estopped from setting up the forfeiture, as its agent was present at the time, and examined the premises, and it was to be presumed that he had as much knowledge as to the value of the land as had the plaintiff.

After the delivery of the policy, the plaintiff, without the written consent of the company, gave a chattel mortgage upon four cows, which were covered by it. The policy provided that "if the said property shall be sold or conveyed, or if the interest of the parties therein be changed in any manner, whether by act of the parties or by operation of law, or if the property shall become encumbered by mortgage, judgment, or otherwise, . . . . then and in every such case the policy shall be null and void until the written consent of the company at the home office is obtained." *Held*, that as to the cows, the policy was avoided by the mortgage given upon them.

Where different articles of property are separately described in a policy, and insured for specific sums, the damages allowed for the destruction of any article cannot exceed the amount for which it was insured.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

August 16, 1873, the defendant issued a policy of insurance to the plaintiff by which it insured her against loss or damage by fire or lightning, in the sum of two thousand dollars, for the term of three years, as follows:

$400 on Dwelling-house and Wood-house if attached.

$250 " Household Furniture therein.

$150 " Provisions and Wearing Apparel therein.

$100 " Butter and Cheese in House and Milk House.

$250 " Barn No. 1, and Stable.

$300 " Produce therein.

$100 " { Farming Utensils in said Barns.
{ Carriages, Sleighs, and Harnesses therein.

$450 " { Horses, not to exceed $—— on each Horse.
{ Cows, not to exceed $—— on each Cow.

$2,000

Prior to issuing the policy the plaintiff made a written application for insurance, in which she stated that her title to or interest in the property was by deed, and that the value of the land and buildings was $3,000, which application was referred to in the policy as forming a part thereof.

On April 19, 1875, the plaintiff executed and delivered to Catharine Murphy a chattel mortgage upon a horse and four cows, being part of those described in the policy, to secure the payment of $105, in one year, with interest. No consent of the defendant was ever obtained to the giving of this mortgage.

This action was brought upon the policy of insurance, and was tried before a referee, who found that the policy was issued by the defendant on the written application of the plaintiff, which among other things represented that the land and buildings mentioned in said application were of the value of $3,000.

That at the time the said application was made, the lands and buildings therein described were not worth more than $1,500.

That the value of the personal property covered by the said policy of insurance belonging to the plaintiff and destroyed by fire, was $1,080.

He also held and decided as matters of law:

*First.* That all the material representations by the plaintiff contained in the said application were incorporated in the policy of insurance, and were warranties on the part of the plaintiff.

*Second.* That the representation of the plaintiff as to the value of the premises on which the buildings stood was a material one, and was a warranty of value.

*Third.* That by reason of the breach of warranty of value, the plaintiff cannot recover the loss on the buildings covered by said policy.

*Fourth.* That the plaintiff is entitled to recover of the defendant the value of the personal property belonging to her, which was covered by said policy, destroyed by fire, to wit . . $1,080 00

And interest thereon from June 26, 1875, amounting to . . . . . . . . . . . . . . . . . . . 198 41

                                                            $1,278 41

*A. H. Sawyer*, for the appellant.

*S. Cromwell*, for the respondent.

HARDIN, J. :

The referee found the policy invalid as to the buildings named therein. The amount named in the policy on buildings, was $400 on the house, and $250 on the barn, and it contained separate specifications of the amount insured upon the different classes of personal property. The learned counsel for the appellant now insists that "there having been a breach of the warranty, as to title and as to the value of the property, the plaintiff was not entitled to recover in this action, either for the loss on real or personal property, and that the finding of the referee, that the plaintiff was entitled to recover of the defendant the value of the personal property belonging to her, covered by the policy destroyed by fire, was for this reason error. He undertakes to support this position by asserting that the case of *Merrill* v. *this same defendant*, lately decided at a circuit held by me, affirmed in this department, 10 Hun, 428, and in the Court of Appeals, did not involve a breach of a warranty, and therefore does not apply here.

We need not pass upon the effect of the Merrill case upon the findings presented to us by the referee, because we are not satisfied with the conclusion that the policy before us was invalid as to the buildings. That conclusion was asked for upon two grounds upon the trial below, and they are repeated here, viz.: 1. That there was an untrue statement as to title, and (2) as to the value of the land and buildings. As to the title : the application, which was

filled out by one T. C. Waite, an agent of the defendant's company, contained a question, viz. : What is your title to or interest in the property? Written after it by the agent was the word "Deed." We do not think the question was answered. Possibly it would have been answered if the agent had written in the blank left to fill in an answer to the question the words " *by deed*," but such were not found in the answer. The question as framed seems to ask for the quantity of the plaintiff's title to, or interest in the premises.

Again: she was the widow of one Timothy Dacey, and had been such for about a year, and she took under his will as devisee, all the interest or title which he had at his death. His will was duly published and admitted to probate. It appeared that in his lifetime he received a deed of the premises, and was in possession of the mat the time of his death, and his wife, the plaintiff, was residing with him. She therefore, in his life, had a dower interest *inchoate* during his life and consummate by his death, and that interest certainly came to her by or through a deed to her husband. Besides, the lands were conveyed to her husband by deed, and in a general sense her title or interest was " *by deed*," that is, through a deed. We think a forfeiture cannot be made out, by reason of the filling the blank, after the question with the word " *deed*." Forfeitures are not favored. Especially should this be so held when the effect of a forfeiture, if sustained, would be to give one party the money of another for a *void paper*, to take the premium and give naught to the party paying the same in return. Parties ought not to be held to have intended to pay their money and the others to receive and hold the same for a *nudum pactum*, unless such intent is clearly established. For the reasons stated, as well as those stated by FOLGER, J., in *Merrill* v. *this defendant*, 73 N. Y., 452, we are of the opinion that there was no breach of warranty shown in respect to the title or interest which the plaintiff had in the premises.

We now come to the point made as to the valuation. The application states dwelling-house and wood-house insured, $400, and the valuation thereof at $600 ; the barn, insured, $250 ; valuation of it, $400. There was abundant evidence to show they

were worth more than specifically stated. But it is said that near the close of the application the following question and answer were inserted, viz.: "What is the value of the land and buildings?" and written after are the figures, viz.: "$3,000." This application was dated August 16, 1873, and was written or filled up by T. C. Waite, solicitor, and he subjoined a statement that he had "carefully" examined the above risk July 24, and that he had inspected the chimneys and the pipes where they pass through partitions and flues and enter the chimneys, and that they are all safe," and so he, as agent of defendant, certified to the company. He testified that when he called upon the plaintiff, to insure, he was an agent of the defendant, and that he wrote the answer to the questions in the application, and that he signed her name to it, at her request, and forwarded the papers to the company. He learned her husband was dead, and, therefore, that she applied to him for the policy. It appears she could not read or write. The referee has found the value of the buildings and land, which consisted of forty-five acres at the time of the insurance, was $1,500, and the defendant relieved by the answer written to the question as to what was the value of the buildings and lands.

The policy contained the following conditions: " All applications for insurance must be made in writing, prepared by an authorized agent of the company, and signed by the applicant or by his authority, *and all* statements contained in the application will be taken and deemed to be warranties on the part of the assured." We think the clause of the policy must be construed with reference to the application that contained a statement, viz.: "Dwelling-house and wood-house, if attached, amount insured, $400; valuation, $600. Barn No. 1 and stable, amount insured, $250; valuation, $400."

We have seen that this is entirely a correct statement, and of course the object of ascertaining the value of the buildings was attained by the information given in this answer. The buildings were to be insured—the lands were not. It is difficult to see any object in this particular case of applying for information as to the value of the land, and yet, as the question was addressed to the plaintiff, she gave her *opinion* of the value of the land and build-

ings. Is a mistake by her in the opinion fatal? Before such a conclusion can be arrived at, it must clearly appear, that after correct information had been asked and stated as to the value of the buildings, the opinion expressed by her as to the value of the lands was a "statement" or warranty within the terms of the policy. (*Fitch* v. *Am. P. Ins. Co.*, 59 N. Y., 572.) If the inquiry had been for the purpose of ascertaining a valuation of the thing insured, it would be easy to understand that within the sense of the policy, the answer embraced a "statement" or warranty. But not so here—the opinion of the assured as to the value of the land does not seem to be one of the "statements" which should be deemed embraced in the spirit and intent of the policy. But be that as it may, the answer as to the value of the land could not have been an inducement to the issuing of the policy on the buildings put forth for any fraudulent purpose. (*Simar* v. *Canaday*, 53 N.Y., 298.)

By the circumstances already adverted to, it appears the agent of the company had examined the premises, and he therefore fully knew the essential facts to enable him to judge of the value of the lands. He being the agent of the company, possessed for the company a knowledge of the value of the real estate in addition to the statement that the buildings were worth $600, and $400, as stated in the application. He must be deemed to have such knowledge for the company, having derived it in the due course of the business of the company. (*Hawley* v. *Keeler*, 53 N. Y., 114.) The policy, therefore, was issued by the company, with full knowledge of the *facts*, and the company may fairly be considered present at the widow's house, when it wrote the policy in question. Suppose it had been in the house when the intelligent and astute board of directors and officers wrote and issued its policy, and had taken from her such a representation or affirmation of her views of the value of the property, buildings and lands, and then issued its policy, and taken her money, would it· not be reasonable to suppose that they intended to waive any warranties, if she had made any, as to the value of the land? Or would it be more reasonable to suppose that they took her premium money, and delivered her a policy absolutely void at its inception, and thus intended to practice and consummate a fraud upon her by placing in its coffers the money

so received for a policy void at the time of its delivery. (*Van Schoick* v. *Niagara Ins. Co.*, 68 N. Y., 434; *Flynn* v. *Equitable Life Ass.*, 9 Weekly Dig., 324; *Landers* v. *Watertown Ins. Co.*, 19 Hun, 179, Op. of BOARDMAN, J.)

Or would it be more reasonable to say that the company was estopped from setting up the answer made by her as to the value of the lands, to defeat the performance of a contract which they entered into presumably with as much, at least, knowledge as she possessed upon the subject of the value of lands owned and occupied by her in connection with the buildings, whose value she had in her statement correctly given? (*Gates* v. *Penn Fire Ins. Co.*, 10 Hun, 489; *Chase* v. *Peoples' Ins. Co.*, 14 Id., 456; *Broadhead* v. *Lycoming Fire Ins. Co.*, Id., 455.)

There was evidence in the case which would justify the conclusion that the company knew of the value of the lands, and either waived the condition, or became estopped from setting up any such forfeiture. (*Landers* v. *Niagara Ins. Co.*, 19 Hun, 178; *Richmond* v. *Niagara Ins. Co.*, 9 Weekly Dig., 394, op. by ANDREWS, J.)

We therefore ought not to assume that the policy was void at its delivery as to the buildings, and we must proceed to consider whether the recovery was proper in respect to the personal property covered by the policy, without determining whether this case could be distinguished from the Merill case, and whether that case is the law upon the subject of the right to recover for separate insurance in a policy, upon personal property, where the policy is void as to the buildings. We may say in passing, however, that the correspondence submitted in the argument before us of the attorney who had charge of the defense in the Merill case, and in this case before the referee, and who instituted the appeal, assumed that the principles laid down in the Court of Appeals in that case were decisive of this case, at least so far as to permit a recovery for the personal property, although it be assumed that the policy was inoperative as to the buildings. (*Merill* v. *Agricultural Ins. Co.*, 73 N. Y., 452.)

Upon the 19th of April, 1875, the plaintiff executed a chattel mortgage to secure $105 to Catharine Murphy, upon four cows. Daniel Dacey also joined his mother in the mortgage. He says

that the same four cows described in the mortgage were burned, and that they were specified in the proofs of loss; and "that the plaintiff tries to recover for the same in.this case." The referee refused to find such fact when requested to. Such request was coupled with a request to find that the mortgage constituted an incumbrance upon said cows, and that plaintiff cannot recover for the loss of the cows.

Was this refusal error? We see by the evidence already alluded to that the cows were included in the mortgage. The policy contained a clause, viz., "Or if the said property shall be sold or conveyed, or if the interest of the parties therein be changed in any manner, whether by act of the parties or by operation of law; or if the property shall become incumbered by mortgage, judgment, or otherwise, . . . then, and in every such case, and in either of said events, the policy shall be null and void, until the written consent of the company at the home office is obtained." No written consent was obtained. It has already been said by the Court of Appeals, at the instance of the defendant, that a change of interest which takes place by the death of the insured avoids the policy. (*Sherwood* v. *Agricultural Ins. Co.*, 73 N. Y., 448; *Sherwood* v. *Agricultural Ins. Co.*, 10 Hun, 593.) We refused, in *Bailey* v. *Homestead Ins. Co.* (16 Hun, 503), to hold a policy avoided by the recovery of a judgment against the assured, when the policy contained a clause that the company shall not be liable, "if, without the consent of the company written on the policy, the property insured shall hereafter become incumbered in any way," and the Court of Appeals sustained our judgment, in January, 1880. (See MS. op. of Andrews, J.) That decision was put upon the ground that the condition contemplates some act of the assured, and was not broken by the recovery of a judgment.

That case does not disturb the holding in *Egan* v. *Mutual Ins. Co. of Albany* (5 Denio, 328), which held a policy avoided by a judgment under a condition in a policy avoiding it, if the assured "shall suffer any judgment or decree operating as a lien on said property, or any part thereof, to pass against him." Under the condition we have quoted from the policy before us, we think it was intended to provide that if the property insured shall be *sold*

,or conveyed, or if the property shall become incumbered by mortgage or otherwise, the policy shall be void as to the property so sold, conveyed or incumbered by the act of the party. (*Sherwood* v. *Agricultural Ins. Co.*, 73 N. Y., 447, and cases referred to *supra*, and *Merrill* v. *same defendant*, 73 N. Y., 466.) We therefore conclude that as the plaintiff had by mortgage sold or incumbered the four cows before the loss happened, and without the written consent of the company obtained, the policy, as to the four cows, was avoided, and the referee should so have found, and omitted the value of such cows from the assessment of damages by reason of the loss of the personal property. (*Savage* v. *Howard Ins. Co.*, 52 N. Y., 502.) The referee allowed $228, and interest from June 26, 1875, and that should not have been found against the defendant.

There was insured $250 on household furniture, and the referee found $311, being an excess of $61 over the amount insured, and he also found an excess of $121 upon provisions and wearing apparel, and an excess of $5 upon farming utensils ; in the aggregate $187 upon the three items. We think the referee ought to have kept the damages within the stipulations of the policy as to the amounts placed upon the several classes of property. We must, therefore, hold that his assessment of damages exceeded the stipulations of the policy in regard to the several classes, to the amount of $187.

Upon the argument, counsel for both parties asked us to modify the judgment if we found any errors in regard to the items allowed.

We have concluded to allow the judgment to be modified if the plaintiff shall give the proper stipulation to strike therefrom $415, and interest thereon from the 26th day of June, 1875. If the plaintiff stipulates within twenty days to strike out from the recovery $415 and interest from 26th of June, 1875, the judgment, as so modified, will be affirmed with costs; if such stipulation be not given, a new trial will be ordered, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.