## QUALIFICATIONS FOR BRINGING AN ACTION TO QUIET TITLE.

Common Pleas Court of Cuyahoga County.

AUGUSTA C. LOCKWOOD ET AL V. GRANT T. WHITTLESEY ET AL.

Decided, September, 1912.

*Action Quia Timet—Can Not be Invoked to Create Title—But are Maintainable Only by Those Having Title—Inherited Title Not Divested by Indebtedness to Decedent—Proper Procedure with Reference to the Debtor Heir—Rights of Other Creditors of Said Heir and of Co-tenants.*

Inasmuch as a debtor heir must account to the estate of the decedent for the amount of his indebtedness, and his interest in the estate is liable for all his indebtedness without precedence to the claim of the estate, it follows that his co-tenants can not maintain an action against him and creditors other than the estate to quiet their title in the lands of the decedent.

*Carpenter, Young & Stocker,* for plaintiff.
*Wing, Myler & Turney* and *C. L. Stocker,* contra.

FORAN, J.

The petition filed in this case is a petition *quia limet* or to quiet title. It was tried upon an agreed statement of facts which, so far as is essential to the determination of the real question involved, discloses that one Harriet T. Hanford, a widow, resident of Cuyahoga county, Ohio, died intestate, May 19th, 1910, seized in fee simple of the real estate described in the petition. She left as her sole heirs at law, the plaintiff, Augusta C. Lockwood, a sister, the plaintiffs, Augusta L. Whittlesey and Charles H. Whittlesey, and the defendant, Grant T. Whittlesey, children of a deceased sister. At the time of the death of the decedent, Harriet T. Hanford, the defendant, Grant T. Whittlesey, was indebted to her for moneys loaned to him by the decedent in a sum largely in excess of his interests in her estate. The decedent left no other real estate except that described in the petition. She left more than sufficient personal property to pay

all debts due against her estate. The defendant, Grant T. Whittlesey is wholly insolvent and a non-resident of Ohio; he has paid no part of his indebtedness to the decedent's estate and the same is uncollectable. An administrator was duly appointed and qualified but no action has been taken by him or by the plaintiffs in any court, or by any legal process to subject the estate or interest of Grant T. Whittlesey in this real estate to the payment of his indebtedness to the estate of the decedent. Shortly after the death of the decedent, the plaintiffs took possession of said real estate, collected rents accruing therefrom and are still in possession thereof. The original petition was filed on November 15, 1911. A demurrer filed to this petition was sustained, and the amended and supplemental petition, upon which the case is at issue, was filed May 16th, 1912. After the filing of the original petition, November, 1911, the defendant, August M. Weber, and the Commercial National Bank, obtained judgment in this court against the said Grant T. Whittlesey in an amount largely in excess of his interest in the decedent's real estate. On behalf of one of the defendants, the Commercial National Bank, a levy was made upon the premises described in the petition, an order of sale issued and the land is being now advertised for sale to satisfy said judgments or the judgment liens against his said interest. On January 17, 1907, the defendant, Grant T. Whittlesey, filed a voluntary petition in bankruptcy in, and was adjudged a bankrupt by the District Court of the United States for the Northern District of Ohio, Eastern Division. On November 11, 1907, he filed his petition for discharge, which he subsequently, on March 13th, 1912, withdrew. He has not filed an answer in this case and the withdrawal of his petition for discharge, after this action was commenced, would seem to indicate that he is not to be considered in the light of an adverse defendant.

In view of these facts and under these circumstances it seems to us that the only question presented to the court is: Can this action to quiet title be maintained? An action to quiet title, surely involves the proposition that there is a *title* to be quieted. It can not be said that the action may be invoked to *create* a title

that does not exist, and then quiet the title thus sought to be created.   It is admitted that the plaintiffs have absolute title, by inheritance, in common to five-sixths of this property, and it is further admitted by counsel for plaintiffs that if Grant T. Whittlesey was not indebted to the decedent, he also would have acquired complete title to one-sixth of the decedent's real estate. In this opinion all reference to the plaintiff's title will be understood as relating to their alleged title to the other one-sixth of this real estate, which the defendants, Weber and the Commercial National Bank, claim is owned by and the title in Grant T. Whittlesey.

Briefly stated the proposition is this:   A dies intestate, seized of certain real estate.   B and C are his sole heirs at law, but C at the time of A's death owed him more than his interest in decedent's real estate is worth.   Does this fact, of itself, without recourse of any kind to legal action, *divest* C, at the instant of A's death of his inherited title to a half interest in the lands of A, and at the same instant *invest* that interest or title in B? If the indebtedness of C, *ipso facto*, at the moment A dies, divests C of his interest and title and invests that interest and title in B, without legal action of any kind, then B could maintain an action to quiet his title.   But if the indebtedness of C does not, *ipso facto*, destroy and extinguish his title and interest in the lands of A, then B can not maintain an action to quiet his title, and for the simple reason that he never had a title to quiet.

The action is brought under Section 5779, Revised Statutes (11901, General Code), which provides that "an action may be brought by a person in possession, by himself or tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse interest."   That is a person in possession of real estate, by himself or tenant, may bring an action against another, "who claims an estate or interest therein adverse to him"—that is, adverse to the plaintiff's estate or interest.   The very language of the statute implies and presupposes that the plaintiff has an interest or estate in the lands.   It will not be contended for a moment that a man may unlawfully take possession of his neigh-

bor's land, and because of the mere naked posession, maintain an action to quiet title. He may bring the action, of course, but to bring an action and maintain it or prevail in it involves the right to the relief demanded. Mere naked possession of real estate does not confer title, nor does possession ripen into title, unless it is adverse and continues for twenty-one years. Hence before · this kind of an action can be maintained something more than mere possession must be shown and proven. If the statute, itself, was not clear on this point, it is made so by Sections 11903-11904, General Code, which relate to the remedy or rule of pleading in such cases. Section 11903, provides that it will be sufficient if the plaintiff pleads or states in his petition that he has a legal estate in the lands; and Section 11904 provides it will be sufficient if the defendant, in his answer, denies generally *"the title alleged in the petition."* That the words "estate or interest," used in Section 11901, General Code, are synonomous with title is quite apparent.

By Section 14 of the Chancery act of 1831 (29 O. L., 81), it was provided that "any person having *legal title and possession* of lands" might bring this action. This section was somewhat modified from time to time, until 1870, when it was amended so as to read substantially as the first paragraph of Section 11901, General Code, now reads (Volume 67 O. L., 116, Section 557, S. & C., 1118). The statute was further enlarged in 1893 to include the right to maintain the action by a person out of possession, provided he had an estate or interest in remainder or reversion in the lands in controversy (Volume 90 O. L., 226). As thus amended the statute is now known as 5779, Revised Statutes, or 11901, General Code. Before the amendment of 1870, the Supreme Court of this state held, under the prior statutes, that title could not be quieted in favor of a party, unless he had both possession and the legal title, and it was necessary for him to allege such possession and title in his bill and prove them at the hearing (*Hubbard* v. *Clark*, 8 Ohio, 382; *Scott* v. *Douglass*, 5 Ohio, 194); that a vendee who had not acquired the legal title could not sustain a bill of peace, since no other kind of title would suffice. *Thomas* v. *White*, 2 O. S., 540.

The words estate, interest and title are frequently used in our statutes, but no attempt is made by statutory provision to define these terms. It seems clear that before a plaintiff can prevail in a *quia timet action* as against the world, he must show such estate, interest or title in the lands as amounts to absolute ownership. Mere naked possession in the plaintiff in the absence of paramount title in the defendant will entitle the plaintiff to a decree against such defendant, though it be illegal against others (*Mains* v. *Henkle,* 3 West. L. M., 593). But such a decree can not be obtained against a defendant who shows a valid, legal, or equitable interest, estate or title in the lands superior to that of the plaintiff. Under the Chancery act of 1831, to maintain this action, a plaintiff had to show legal title as well as possession. In *Avery* v. *Durfees,* 9 Ohio, 147, the court in answer to the question, "What is real estate," said, "If it be such an interest as can be enforced in a court of law, it is a legal interest or estate. If it be such as can only be enforced in a court of chancery, it is an equitable interest or estate"; and in *Douglass* v. *McCoy,* 5 Ohio, 522, the court practically held that a legal title to lands was such an interest as could be sold upon execution. Before the bill could be maintained under this act, the legal title had to be first secured in a court of law. Counsel for plaintiffs insist, however, that under the present statute, the practice is so broad that the action may be instituted in any case where plaintiff claims an interest in lands, and even to determine whether of right he ever had a title or color of title.

Granted, but if no title is shown how can it be quieted? The real purpose of the amendment of 1870 (Section 11901, General Code), will, we think, become apparent from a cursory consideration of the principles involved. For instance A, to secure a debt due B, executes and delivers to him a mortgage upon certain real estate for its full value. A really has no equity of redemption in the land. B exercises acts of ownership in relation thereto, such as to sell some of same and allotting the balance. B never actually took possession of the land, but by reason of his acts in relation to it, is constructively in possession. He may maintain a bill to quiet his title, without having first fore-

closed A's equity of redemption (see 12 O. Dec. [Reprint], 490). Here we see that B really owned the land and had paid full value for it. Under the act of 1831, not having the legal title he could not maintain the action. Under Section 11901, General Code, he can.

Again: D conveys certain real estate through a trustee to his wife, which is to be in full of all her statutory claims against his estate. The deed was not recorded and was, by consent of the parties afterwards destroyed. D dies intestate. The wife notwithstanding her consent to the destruction of the deed, may elect to keep the real estate and have her title thereto quieted under Section 11901, General Code (see *Spangler* v. *Dukes,* 39 O. S., 642). This case proceeds upon the theory that the deed to the wife was in legal effect a jointure during coverture which vested in the wife an estate in fee, which was not divested by the destruction of the deed. There was full consideration and title vested in the wife. She became in fact, the owner of the land, and if she had taken possession thereof after husband's death, she could maintain a bill of peace even under the act of 1831. Ownership then was essential under the old chancery act, and is still essential under Section 11901.

It would seem to be elementary that if an interest in real estate, in a given case, does not amount to absolute ownership, it is because, at the same time, there is another interest in the same land pertaining to other persons. In the case at bar, can it be said that at the death of Harriet T. Hanford, the plaintiffs had an absolute and entire ownership in all the real estate in question? We think not; for the reason that at the same time there was another interest in the same land pertaining to the defendant, Grant T. Whittlesey, which interest amounts to a legal title and may, therefore, be taken upon execution. It is also elementary that where one man may have the ultimate right of property in real estate, another the right of possession, a third the actual possession, each has a qualified or incomplete interest or estate in the land, which if transferred to and merged in one person, constitutes in such person an absolute estate or fee simple. In the case at bar the plaintiffs and the defendant, Grant T. Whitlesey, at the death of the decedent, each in com-

mon, had the ultimate right of property and the right of possession in and to this real estate, and because the plaintiffs took actual possession, it does not follow that the ultimate right of property and the right of possession of Grant T. Whittlesey to one-sixth thereof was destroyed and extinguished. The words "estate or interest" in real property as used in Section 11901, which may be quieted by petition *quia timet,* are not used in the broad sense of involving the quantity of interest, measured by duration and extent, which a person has in lands, from absolute ownership down to mere naked possession. They are rather to be taken as indicating title as defined by Coke's maxim, *titulas est justa causa possidendi id quod nostrum est * * *.* A title is the just right of possessing that which is our own, * * * the lawful cause or ground of possessing that which is ours. 34. Cal., 385; 81 Va., 383; 73 N. Y., 456.

A title then that can be quieted means a perfect title, for having title to land means owning it. He who has possession, the right of possession and the right of property, has a perfect title (Anderson's Dictionary; *Shelton* v. *Alcox,* 11 Conn., 349; 2 Bl. Com., 195, 1 Kent, 177-8). The plaintiffs have possession of the inherited interest of Grant T. Whittlesey in decedent's real estate, but we fail to see or understand how they ever acquired the right of possession and the right of property to this interest.

In the case of *Collins* v. *Collins,* 19 O. S., 468, it was held the action could not be maintained under Section 557 of the code (S. & C. 1118, above cited), against persons claiming a remainder in the lands contingent upon the death of the plaintiff without issue. In the opinion in this case Welch, J., in referring to the amendment of 1870, Section 557 of the code (S. & C. 1118), which provides the action might be brought by a person in possession, by himself or tenant, without the pre-requisite allegations of legal title, said:

"The only effect of this provision in the code is to substitute the plaintiff's possession for the establishment of his right by the trials at law. In other essentials the remedy by bill of peace remains the same as under the old practice."

Possession may give a plaintiff the right to bring the act on before he has established a legal title by trial at law, but if his

title is denied, he must establish it, or his action fails. The proposition is clearly stated in Bispham on Principles of Equity, Section 575, where it is said, "Bill to remove· a cloud from a title" may be asserted in almost any case in which justice requires that the *title* of the *party* in possession should be quieted and *"the evidence of that title clear."* To maintain this action, then, not only must the plaintiff show title in himself, but it must also appear that the adverse claim of the defendant is of no validity, but merely vexatious—*ne injuste vexes*—freely vex not unjustly, or as it has been said, there must be some apprehension of injury at the hands of the defendant, by the assertion of hostile claims which have no foundation in law or fact.

In *Mains* v. *Henkle,* 2 O. Dec., Reprint, 533, Lawrence, J., held that Section 557 of the code (S. & C., 1118), extended the general equity doctrine and gave bills of peace more of the character of bills *quia timet,* thus enabling "any person in possession, by himself or tenant, of real property, even by an equitable title in fee, or for a term to maintain a petition to quiet title." It is quite apparent, therefore, that there must be a title of some kind to the real property, which the court can merge into an absolute title or a title for a term in the plaintiff to enable him to maintain the action. The plaintiffs fully recognize this for they assert in their petition that they are not only in possession but "are the owners in common in fee simple" of the property described in their petition. They say their title is *feodum simplex,* a lawful and a pure inheritance, wholly free and clear of any qualifications or conditions, for that is what is meant by a fee simple title. A fee simple is the largest estate and the most extensive interest that can be enjoyed in land, being the entire property therein, and confers unlimited powers of alienation (4 Kent, 5, 1 Bl., 690; 1st Barb., 577; 12 Johns, 177). Let us test their alleged title to the land in question by this standard. Is the estate they claim, or was it at the decedent's death, wholly free and clear of any qualification or condition? Suppose they undertook to deed this real estate the day the decedent, Harriet T. Hanford, died, alleging that by reason of the fact that an heir who had a one-sixth interest there-

in was indebted to the decedent in a sum in excess of that interest, and therefore, had no estate in the land, that they were sole owners thereof in fee simple, would such a deed convey absolute title in and to the land? Who would take such a deed? The filing of this petition is an admission that such a deed would not convey an absolute title. They claim they have absolute title conferring full power of alienation, and yet they want it quieted. This seems inconsistent.

It seems to us that there is a vast difference between quieting *their* title and extinguishing the title of the defendant, Grant T. Whittlesey. Suppose the contention that the indebtedness of Grant T. Whittlesey in excess of his interest extinguished his title in the land, is sound, there remains the contingency that the debt may be disputed, and a qualifying condition interposed between the plaintiffs' claim and their right to enforce it. It is true, it is admitted, the indebtedness in this case is in excess of the interest, but that does not destroy the principle involved or render it less embarrassing to the claim that the indebtedness of an heir to the estate of his ancestor *ipso facto,* divests him of his title as heir if the indebtedness exceeds the inheritance.

Take another view of the case: Suppose since the death of Harriet T. Hanford the real property involved so increased in value that the indebtedness of Grant T. Whittlesey was less than one-sixth of the value of the property? In such case he would undoubtedly still have an interest therein, admitting the contention of the plaintiffs to be true.

It follows then that the most plaintiffs can justly and legally claim is that heirs of a decedent take their distributed shares *subject* to any indebtedness they may have owed to the decedent, during his lifetime. This, we understand to be the well settled law of this state. In other words, if an heir owed the decedent, the amount so found due decedent's estate will be a legal as well as equitable set-off against his interest in the estate of the decedent.

It is admitted that this is purely an equitable action. As a general rule a court of equity will not entertain jurisdiction of a petition to quiet title or remove a cloud where there is a plain

adequate and complete remedy at law.  This doctrine is so well established as to be elementary, and citation of authorities or precedents supporting it would be wholly superfluous.

Have the plaintiffs, or did they have a plain adequate and complete remedy at law?  Surely it will not be denied that the administrator not only had a right, but it was his duty to have brought an action against Grant T. Whittlesey on his indebtedness in a court of law, obtained judgment against him and levied upon his interest in the lands described in the petition, and sold that interest to satisy that judgment.  Suppose this had been done, such judgment obtained and such levy made, would the plaintiffs be heard to say that the lands could not be sold because the whole title was in them and that Grant T. Whittlesey had no interest in the land?  The answer to this question, we think, conclusive of the point or question involved.  If this real estate could be sold to satisfy a judgment against Grant T. Whittlesey in favor of the estate of the decedent, it follows inevitably that the plaintiffs did not have fee simple title to the whole of the real estate, at the time of the decedent's death.  We believe there is no escape from this conclusion.  That the indebtedness of Grant T. Whittlesey is a part of the assets of the decedent's estate will not be denied.  See Woerner, American Law of Administration, Section 71, where it is said:

"The true principle seems to be that a debt owed by an heir, constitutes part of the assets of the estate as much as that of any other debtor, for which he should *account* before he should be allowed to receive anything out of the other assets."

The true rule then seems to be that a debtor heir must *account* to the decedent's estate and his interest will be *subject* to the payment of his indebtedness.  Nor can it be said that the creditor estate takes precedence of other creditors of the debtor heir.  If this were true, the plaintiffs and the administrator could have become parties to the suits brought by the defendants, Weber and the Commercial National Bank, and prevented the order of sale from issuing or at least availed themselves of the proceeds of such sale, and thus render the bringing of this action wholly unnecessary.  The real purpose of the rule, which

requires an heir of a decedent to take his distributive share, subject to any indebtedness he may have owed to the decedent, is to secure equality of inheritance among all the heirs, for it has been held "it is inequitable and at variance with the policy, defined in our statutes to permit one to share in an estate, which is diminished by his default and to the prejudice of those, whose rights are equal to his own" (62 O. S., 619). The debtor heir can not share in the estate equally with the others until he has *accounted* for his indebtedness. But it will be noticed from the language used by Shauck, J., in 62 O. S., 619, that the rights of the other heirs are only equal to, not greater than the debtor heir. This does not mean, therefore, that a diligent creditor of the debtor heir may not attach or levy upon the interest of the debtor heir, before that interest has been subjected by the estate or the other heirs, or before the debtor heir had accounted to the estate for his indebtedness. To hold otherwise would open wide the door to collusion and fraud.

Indeed this action is an attempt to accomplish what could not be accomplished in the suits prosecuted by the other defendants, above named, or by a creditor's bill, if they had reduced their claim to judgment, a thing easily done even yet, as Grant T. Whittlesey is apparently ready and willing to confess judgment in favor of the administrator or the plaintiffs.

Again, if there were no debts against the decedent's estate and administration was unnecessary, the plaintiffs might bring or have brought an action in partition and in that action subjected the interests of Grant T. Whittlesey in this estate to the payment of his indebtedness to the estate. That is his indebtedness could be, in such case, set off against his interest in the estate or the land. We have diligently searched for a precedent or authority in *paru passu* with plaintiffs' contention and failed. We do not believe that a case involving the precise question here submitted has ever been decided. For the reasons indicated, the petition will be dismissed and the defendants given judgment for costs.