PHILIP HERRMAN, Respondent, *v.* THE ADRIATIC FIRE INSURANCE COMPANY, Appellant.

Defendant, in June, issued to plaintiff a policy of insurance upon the buildings upon his farm, *i. e.* a dwelling-house, used by the latter as a summer residence; the outbuildings appurtenant thereto; a farm-house, barn, etc.; also upon the furniture and personal property upon the farm. The different items of property were separately stated, with the amount of insurance on each. The policy contained a condition declaring it void in case "the above-mentioned premises * * * become vacant or unoccupied, and so remain for more than thirty days, without notice and consent of this company in writing." Plaintiff was living in the dwelling-house at the time the policy was issued; he left the place in November, leaving the dwelling furnished and in charge of his farmer, who occupied the farmhouse, and members of whose family visited and aired the dwelling once a week; plaintiff and his wife also visited it once a fortnight. In April, 1875, the dwelling and some of the outhouses were destroyed by fire. In

an action upon the policy, *held,* that the dwelling-house was not occupied within the meaning of the policy, which was therefore forfeited by a failure to notify and obtain the consent of the company.

For a dwelling-house to be occupied, within the meaning of such a condition, it must be used by human beings as their customary place of abode.

Also *held,* that the fact that defendant knew, when the policy was issued, that the dwelling was used as a summer residence only did not affect the condition, as the dwelling was then occupied and provision was made for the cessation of occupancy.

Also *held,* that the fact that the farm-house and other buildings remained occupied did not save the condition; that the words "above-mentioned premises" were to be used distributively, and to be applied to each item of property, as separately stated in the policy.

It was claimed that evidence that the dwelling was unoccupied furnished no evidence as to the outbuildings consumed. *Held,* untenable, as the latter were appurtenant to and the use of them concurrent with that of the dwelling.

*Herrman* v. *M. Ins. Co.* (81 N. Y. 184), distinguished.

(Argued March 23, 1881 ; decided April 19, 1881.)

APPEAL from order of the General Term of the Superior Court in the city of New York, made the first Monday of November, 1879, which sustained plaintiff's exceptions, set aside a verdict in favor of defendant and ordered a new trial.

This action was upon a policy of fire insurance, issued by defendant to plaintiff June 3, 1874.

The policy was for three years ; the property insured was described and the insurance stated therein as follows :

"Two thousand dollars on his two-story and attic frame dwelling-house and three-story tower thereon ; slate roof 28x37 feet, and two-story and attic slate roof, addition 16x17 feet ; $750 on household furniture, useful and ornamental, linen, beds, bedding, plate, plated ware, printed books, wearing apparel and family stores contained therein ; $350 on frame, wash and wood-house, kitchen and privy, about 40 feet in rear of the above-described dwelling ; $1,500 on barn and sheds attached ; $750 on carriage-house ; $400 on frame dwelling ; $150 on outbuildings detached about 100 feet ; situate in the

town of Lloyd, Ulster county, N. Y., being about one mile south from Highland village; $250 on produce in barn and on premises; $75 on live stock; in case of loss, not more than $50 to be paid for any one cow; $500 on four horses, being $125 on each horse; $400 on one carriage; $150 on one carriage; $150 on two open carriages, being $75 on each; $150 on three sets of harness, being $50 on each; all contained in above carriage-house and premises."

The policy contained this condition: "If the above-mentioned premises shall * * * become vacant or unoccupied, and so remain for more than thirty days, without notice to and consent of this company in writing, * * * this policy shall be void."

The premises upon which was the property insured constituted the plaintiff's farm and summer residence. The farm was managed by a farmer in plaintiff's employ, who received, as part of his compensation, the use of the smaller dwelling mentioned in the policy, and who, with his wife and children and a gardener, lived upon it throughout the entire year. The plaintiff, with his wife and children, actually lived upon it during the summer and part of the fall, only. About the 20th of November, 1876, the plaintiff with his family left the premises and returned to his city residence to remain for the winter, leaving in the main dwelling mentioned in the policy all his furniture, and the summer clothing of himself and family. All the premises insured and the property remaining therein were left in charge of the farmer. It was the duty of the farmer to see that the main dwelling, which could be seen from the farmhouse, was well ventilated and properly watched, and he or some member of his family, regularly once a week, did go into and through it, and open all the windows for the purpose of ventilation. The house was then carefully closed again, the windows bolted on the inside and firmly secured, and the outer door locked, and thus secured, the house was left for the ensuing week. The plaintiff, generally, in company with his wife, visited the premises once a fortnight, to see that the farmer took good care of them. The plaintiff was in the habit on

these visits of opening the main dwelling, going through the rooms and lunching therein, but neither he nor his wife, nor any other member of his family passed a night in the house during the winter preceding the fire. About three days before the fire the plaintiff and his wife were there, on one of these usual visits. On the 8th of April, 1877, a fire occurred by which the main building, with its furniture, and the wash-house, kitchen and privy in the rear were destroyed, the loss exceeding the amount of the insurance.

*James Thomson* for appellant. By the terms of the policy, the premises were warranted to continue occupied, and a breach of this warranty avoided the contract. (*Newcastle Fire Ins. Co.* v. *McMorran,* 1 Dow. 225 ; *Hartford Fire Ins. Co.* v. *Webster,* 69 Ill. 392.) The premises destroyed by fire were " vacant and unoccupied " at the time of the fire, and had so remained for more than thirty days prior thereto, without notice to and consent of the defendant in writing, and the policy had become void. (*Keith* v. *Quincy Mut. Fire Ins. Co.,* 10 Allen, 228; *American Ins. Co.* v. *Padfield,* 78 Ill. 108 ; *Paine* v. *Agricultural Ins. Co.,* 5 T. & C. 619 ; *Cummins* v. *Agricultural Ins. Co.,* 67 N. Y. 260 ; *Weston* v. *City Fire Ins. Co.,* 15 Wis. 138 ; *Whitney* v. *Black River Ins. Co.,* 9 Hun, 37; 72 N. Y. 117 ; *Ashworth* v. *Builders' Ins. Co.,* 112 Mass. 422 ; *Cook* v. *Continental Ins. Co.,* 9 Ins. L. J. 887 ; *Poor* v. *Humboldt Fire Ins. Co.,* 125 Mass. 274.) No distinction can be drawn between the dwelling-house and the adjacent buildings destroyed ; all were unoccupied within the meaning of the policy, and the policy had become void as to all. (*Bryan* v. *Peabody Ins. Co.,* 8 W. Va. 605 ; *Friesmuth* v. *Agawam Mut. Ins. Co.,* 10 Cush. 58 ; *Brown* v. *People's Mut. Ins. Co.,* 11 id. 286 ; *Davenport* v. *New England Mut. Fire Ins. Co.,* 6 id. 340 ; *Lovejoy* v. *The Augusta Mut. Fire Ins. Co.,* 45 Me. 472 ; *Lee* v. *Howard Fire Ins. Co.,* 3 Gray, 583 ; *Kimball* v. *Howard Fire Ins. Co.,* 8 id. 33; *Associated Firemen's Ins. Co.* v. *Assum,* 5 Ind. 165 ; *Harrington* v. *Fitchburg Mut. Ins. Co.,* 124 Mass. 126.)

*N. B. Hoxie* for respondent. The words "vacant" and "unoccupied," as used in the case before the court, connected by the disjunctive *or*, should be treated as synonyms, and as so intended by the defendant. (See Soule's Dictionary of English Synonyms ; 2 Burrill's Law Dict. ; 2 Abbott's Law Dict. 625 ; *Bailey* v. *Homestead Ins. Co.*, 80 N. Y. 21.) The premises did not become unoccupied by the temporary absence of the plaintiff and his family at the times, in the manner and under the circumstances detailed in the evidence. ( *Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117 ; *Hall* v. *Ins. Co. of N. A.*, 58 id. 292 ; *Harper* v. *N. Y. Ins. Co.*, 22 id. 441 ; *Same* v. *Albany Ins. Co.*, 17 id. 194 ; *Bryant* v. *Poughkeepsie Ins. Co.*, id. 200 ; *Allemania Ins. Co.* v. *McClure*, 7 Ins. Law Jour. 182.) The condition is technical, and is invoked to create a forfeiture and should be construed rigidly against the defendant, and as favorably as possible for the plaintiff. (*Bailey* v. *Homestead Ins. Co.*, 80 N. Y. 21.) "The premises" were the whole property, buildings, contents and appurtenances together, composing one establishment, residence or county seat; and unless the whole premises became unoccupied, the condition was not broken. (*Bryan* v. *Peabody Ins. Co.*, 8 W. Va. 605, 608.) The premises were not unoccupied, because they were in the charge of and occupied by the farmer and his family. (*Shearman* v. *Niagara Fire Ins. Co.*, 46 N. Y. 526, 532.) In this case the premises, or the dwelling-house alone, should be considered unoccupied only if the same were abandoned as a residence or dwelling, and left without any human being to enter, use, care for and occupy them or it for any purpose. (*Gibbs* v. *Continental Ins. Co.*, 13 Hun, 611, 620 ; *Shearman* v. *Niagara Ins. Co.*, 46 N. Y. 532 ; *O'Neil* v. *Buffalo Ins. Co.*, 3 Comst. 122 ; *Cummins* v. *Agr. Ins. Co.*, 67 N. Y. 260 ; *Gamwell* v. *M. F. Ins. Co.*, 12 Cush. 167.) A dwelling-house is not unoccupied within the fair meaning of this policy, where, as in this case, the household furniture, wearing apparel, etc., remain in it, the house and furniture in charge of and receiving the constant visits, use and care of members of the establishment—the household—and it is

periodically visited, used and occupied by the owner and his wife. ( *Wait* v. *Agr. Ins. Co.*, 13 Hun, 371, 373 ; *O'Brien* v. *Comm. Ins. Co.*, 6 J. & S. 417.)

Folger, Ch. J.   This is an action on a policy of fire insurance.   The property insured consisted of different buildings, and different kinds of chattel property kept in those buildings, respectively.   The different properties insured, and the different amounts put at risk, each are specifically named in the policy with much minuteness.   The property destroyed and for the loss of which the action is brought was but parts of the whole at risk, being the dwelling-house, and most of the contents of it, and four outbuildings, essential or convenient for use with the dwelling.

The question in agitation at the trial term and at the General Term was, whether the policy was avoided by a breach of the condition, that if the premises should become vacant or unoccupied, and so remain for more than thirty days without notice to, and consent of, the defendant, in writing, the policy should be void.   The plaintiff contends that the two words " vacant " and " unoccupied " are synonyms, and are to be interpreted as having the same meaning, and that that meaning is empty.   And then argues that, as the dwelling-house was not empty, there was no breach of the condition.   There are doubtless conditions of a dwelling-house, or other like structure, when either word applied to it, or both words applied to it, will express a like state of it.   There are, however, states of it when that will not be the case.   It is so, because the different things that are receptive of the epithets of vacant and unoccupied are different in their capability and susceptibility of being filled or occupied.   Some cannot have one of those terms applicable to them, without the other at the same time being also applicable.   Some, from the nature of the use which goes with the occupation of them, may not be vacant, and yet they will, in any just use of the term as applicable to them, be unoccupied.   A dwelling-house is chiefly designed for the abode of mankind.   For the com-

fort of the dwellers in it, many kinds of chattel property are gathered in it. So that, in the use of it, it is a place of deposit of things inanimate and a place of resort and tarrying of beings animate. With those animate far away from it, but with those inanimate still in it, it would not be vacant, for it would not be empty and void. And as a possible case, with all inanimate things taken out, but with those animate still remaining in it, it would not be unoccupied, for it would still be used for shelter and repose. And it is because, in our experience of the purpose and use of a dwelling-house, we have come to associate our notion of the occupation of it with the habitual presence and continued abode of human beings within it, that that word applied to a dwelling always raises that conception in the mind. Sometimes, indeed, the use of the word "vacant," as applied to a dwelling, carries the notion that there is no dweller therein ; and we should not be sure always to get or convey the idea of an empty house, by the words "vacant dwelling" applied to it. But when the phrase "vacant or unoccupied" is applied to a dwelling-house, plainly there is a purpose — an attempt to give a different statement of the condition thereof ; by the first word, as an empty house, by the second word, as one in which there is not habitually the presence of human beings. In the case of *Herrman* v. *The Merchants' Insurance Company*,* in this court, in June last, the decision went, not on the ground that the two words were used to mean, or that they meant, the same condition of the building, but that, by the use of the copulative conjunction with them, there was a contract framed of which there was no breach, unless the house was at the same time in the double state expressed by the phrase ; that is, both vacant and unoccupied at the time of the fire, both empty and unused for abode.

It is clear, from the testimony, that the dwelling-house insured by the defendant was not occupied as such at the time of the fire. The fortnightly visits of the plaintiff and his wife to it were not the occupation that is meant when a dwelling-

* 81 N. Y. 184.

house is spoken of. The weekly tours of inspection of the farmer and members of his family living on the grounds, and his supervision of it from his own house, were more useful, but they fell short of being occupation of it. The term "un-occupied," used in the policy, is entitled to a sense adapted to the occasion of its use, and the subject-matter to which it is applied. It does not need that we go into discussion of the good reasons for exacting the condition on taking a risk upon a dwelling-house. It is enough that the parties have come into that covenant. It is to have a meaning fitted to the circumstances in which it was made and to the subject to which it related. We have already said enough to show our opinion that, for a dwelling-house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage. We think that a verdict of a jury would not have been allowed to stand, that found that this dwelling-house was occupied at the time of the fire, within the terms of the policy. But it is said, that though this may be so in general, yet that the defendant made its contract with a view to just the state of things that existed with this property; that it was chargeable with a knowledge of the character and use of the premises, and that there would be a change of occupancy, such as in fact occurred. We cannot yield to that view. It may be that the defendant knew that it was but the place of summer abode for the plaintiff. Its contract was issued in the summer when the property was in strict occupancy, and it provided for the coming of the fall, when that occupancy would be abandoned or modified ; for the policy was not void at once on a cessation of occupancy. That cessation must last for thirty days, and be unnotified to the defendants and continue thereafter without its consent. There was opportunity for the plaintiff to keep up that indemnity or to get other ; and to the defendant to retain the risk, or to be freed from it, when that occupancy was about to cease, and notice was given.

Nor are we able, after much consideration, to agree with the

learned General Term on the ground upon which it put its judgment. The condition of the policy is : " Or if the above-mentioned premises shall · * * · * become vacant or unoc-cupied · * * * this policy shall be void." As we have above said, there were several different kinds and pieces of property insured, and, as was indicated by the description of them, the whole making up a well-to-do proprietor's rural es-tablishment. The understanding must have been that there was comprised in the whole the buildings on a farm or country seat and the chattel property usually kept at such a place. The contention is that the words " above-mentioned premises" are ·collective and apply to all the property described, and the intent of the condition is that if all of it should be left .unoc-cupied, then the policy should be void ; but that one or seve-ral, or many of the buildings might be unoccupied, yet, if the rest were occupied, the condition of the policy would be saved. To give this construction to the phrase in question, it would need to carry it through all the conditions in the policy, to manifest absurdity and to an inconvenient precedent. There is a condition against other insurance, " on the property hereby insured." If the plaintiff had over-insured his dwelling-house, would not the condition have been broken, as to that, though he had not increased that on his kitchen detached ? There is a condition against a change of title of the property. If the plaintiff had sold off so many acres as would include the farm-house, would he have retained his insurance on that building because he had not transferred the whole premises ? ·The plaintiff grasps at a two-edged sword, when he seeks to make such application of those general words of the policy. He con-tends that when words are used in the policy referring back to the property described, they mean to include the whole property. This would be to make the contract of insurance entire and in-·divisible ; and to affect all the property insured with any act of the insured, which, as to any item thereof, worked a breach of any condition. This is not the true, just, or equitable con-struction. The clause is to be used distributively, and to be applied to each singular of the previous description of the

property, as the kind of that property and the nature of the use of it may demand. It was upon this principle that we grounded our decision in *Merrill* v. *Agr. Ins. Co.* (73 N. Y. 452). There we said : " Though there may have been some conduct of the insured as to some of the property, not evil in itself, but working a breach of the condition in its letter, the effect of that breach may be confined to the insurance upon that property, the contract as to that be held to be avoided, and as to the other subjects held valid." This was the converse of the proposition that we are now maintaining.

The case of *Bryan* v. *Peabody Ins. Co.* (8 W. Va. 605) is not parallel with this.

Therefore, though the farm premises and some of the buildings thereon were in actual human occupation, that use of them did not extend to and take in the dwellings burned, so as to keep good the condition of the policy. It is further claimed that it was erroneous for the trial court to direct a verdict for the defendant, because all of the property burned was not unoccupied. Besides the dwelling-house, there was lost a wash-house, a wood-house, a kitchen and a privy. It is contended that there was no evidence that these were unoccupied. The reasoning is ingenious, but it is not convincing. It is said that it does not appear that the occupation of these structures was confined to the plaintiff or the members of his immediate family as it was made up when he dwelt upon the place, and that it might be that the farmer and the members of his family might have used and occupied them. Now, these out-buildings were appurtenant to the dwelling-house ; the use of them was concurrent with the use of the dwelling-house ; they were parts of the one domestic establishment, and separated but forty feet from the main building. It is too plain for denial, save as a *dernier resort*, that the occupancy of them, in habitual, continuous use for the purposes for which they were built and to which they were put, began when that of the dwelling-house began, and ended when that ended.

The plaintiff and the defendant made their contract in such terms as it pleased them both. It may or may not be a strict

and rigorous application to the facts of the case of the condition that we have been considering; but we cannot, consistently with lasting principles of construction and interpretation, hold otherwise than that the plaintiff made a breach of a binding condition, and must abide the unfortunate consequence.

The order of the General Term should be reversed, and judgment absolute rendered in favor of defendant upon the verdict, with costs.

All concur, except MILLER, J., not voting.

Order reversed and judgment accordingly.