ELIJAH J. VANDERHOEF, PLAINTIFF, *v.* THE AGRICUL-TURAL INSURANCE COMPANY OF WATERTOWN, DEFENDANT.

*Policy insuring a dwelling-house against loss by fire — condition as to its forfeiture if unoccupied — when the question of occupancy should be submitted to the jury — when the company will be deemed to have waived it — construction of a consent that it might be unoccupied " during the summer."*

This action was brought on a policy of insurance issued on May 17, 1876, by the defendant covering a house and barn owned by the plaintiff, which provided that if the dwelling-house "shall cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling-houses are occupied as such this policy shall be void until the written consent of the company at the home office is obtained." The policy was issued, through agents of the defendant authorized by it to make surveys and take and forward applications for insurance, who knew that the house was then unoccupied, except by the plaintiff's

children while attending school, from Monday until Friday of each week while school was in session, the house being unoccupied during the remainder of the time, and that the plaintiff intended to continue to use it in that manner. A portion of the house was, by consent of the defendant, occupied by a tenant from July, 1878, until within about a week of the time that a fire destroyed the premises on the night of Monday, May 12, 1879. The plaintiff, who had not been informed that the tenant had left the premises until the Sunday preceding the fire, went to the premises on Monday. His children were not in the house, having been absent on vacation and been prevented by sickness from returning to the house although school had commenced; they were, however, preparing to do so on the next day.

*Held*, that under the peculiar circumstances of the case the question of the occupancy of the house should have been submitted to the jury under proper instructions from the court.

That, even if it could be held that the house was unoccupied when the fire occurred, yet, as it was in the same condition as to occupancy when the insurance was effected, and that fact was at that time known to the defendant's agents, their knowledge must be regarded as its knowledge, and that it must be presumed either that the defendant by mistake omitted to state in its policy that the house was unoccupied or occupied only in the manner stated to its agents by the plaintiff, or waived the provision as to occupancy or held itself estopped from setting it up.

The cases bearing upon these questions cited by MARTIN, J.

During the negotiations between the plaintiff and the defendant's agents for the insurance it was agreed between them that the plaintiff might leave the house wholly unoccupied during the "farming season" of each year. The policy returned by the company containing no consent whatever, it was upon the demand of the plaintiff sent back to the defendant, which inserted a clause consenting that the house might be left unoccupied "during the summer."

*Held*, that the intent of the parties was to employ the word "summer" in its broadest sense, and that it was understood by both parties as being an equivalent for the words "farming season," and was not limited to the summer months of June, July and August.

That it was the intention of the parties that such consent should apply to each year covered by the policy, and that it was not limited to the first year only but extended to all the renewals thereof.

MOTION for a new trial, ordered to be heard at the General Term in the first instance after a nonsuit granted at the Chemung Circuit.

This action was brought on a policy of insurance issued by the defendant, which contained the following proviso: " If the dwelling-house or houses hereby insured shall cease to be occupied by the owner or occupant, in the usual and ordinary manner in which dwelling-houses are occupied as such    *    *    *    this policy shall be void, until the written consent of the company at the home

office is obtained." It was procured through Crane & Mosher, who were agents of the defendant, to make surveys and take applications for insurance, and covered a house and barn and their contents, situate in Millport, N. Y. At the time it was issued, May 17, 1876, the house was occupied only as a home for the plaintiff's children while they were attending school. They occupied it only, from Monday until Friday of each week while school was in session. The remainder of the time it was unoccupied. The precise manner of its occupancy was known and explained to the defendant's agents at the time, and that it was the intention to continue to use it in that manner. It was also agreed between them and the plaintiff, that he might leave the premises unoccupied during the "farming season" of each year. A policy was forwarded to the plaintiff which did not contain that provision. When the plaintiff discovered it, he saw the defendant's agents, and they returned it to the defendant. The defendant then inserted this clause: "Consent that the house may be left unoccupied during the summer;" and it was returned to the plaintiff, who did not examine it until some weeks later. In July, 1878, the defendant gave consent that a portion of the house might be rented, which consent was as follows: "Consent given to rent part of said dwelling." After that a tenant occupied a portion of the house, and the children occupied the remainder as before. A tenant occupied a portion of the house until within about a week of the fire, when he left without plaintiff's knowledge. The plaintiff first learned of it Sunday. He went to the premises Monday; they were burned that night, May 12, 1879. His children were not in the house at the time. There had been a vacation, and though school had commenced, owing to sickness, they had not returned. They were preparing to return on the next day.

On the trial the plaintiff was nonsuited, on the ground that the house was unoccupied, within the provisions of the policy as modified, and, therefore, that the plaintiff was not entitled to recover. To this decision the plaintiff excepted.

A motion for a new trial was then ordered to be heard at the General Term, in the first instance.

*G. L. Smith*, for the plaintiff.

*A. H. Sawyer*, for the defendant.

MARTIN, J. :

The plaintiff's exceptions to the decision of the court in granting a nonsuit, and refusing to submit the case to the jury, present the only important questions involved in this motion. The correctness of that ruling is challenged by the plaintiff on three grounds : First, that whether the house was unoccupied at the time of the fire, was a question for the jury and not the court; second, that if it was unoccupied, the defendant had waived the provision of its policy relied upon, or was estopped from relying upon it; third, that the defendant's consent to its remaining unoccupied included the time when the fire occurred. Was the question whether the house was unoccupied one of fact for the jury? The facts in relation to its occupancy were not disputed. The manner in which it was occupied by the plaintiff's children was not denied, but was well understood. That the plaintiff's tenant had left about a week before the fire, and that plaintiff first learned of his leaving the day before that on which the fire occurred, is undenied. That his children had only left the house during a vacation, which was somewhat protracted by sickness, intending to return the next day, is abundantly proved. It is doubtless true, that no two dwelling-houses are occupied in precisely the same manner. It greatly depends upon the business, the habits and the necessities of each particular family or occupant. The provision in relation to occupancy in the defendant's policy must be construed in the light of the fact, that there is and can be no absolute and unvarying standard applicable to the question.

In *Herrman* v. *Adriatic Fire Insurance Company* (85 N. Y., 169), FOLGER, Ch. J., says : " For a dwelling house to be in a state of occupation there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage." In *Johnson* v. *New York Bowery Fire Insurance Company* (39 Hun, 413), KENNEDY, J., delivering the opinion for this court, quotes with approval, the language employed by MULLEN, J., in delivering the opinion in *Payne* v. *Agricultural Fire Insurance Company* (5 Thomp. and Cook, 619), which was as follows : " For what length of time it (the house) may remain unoccupied, will depend upon the circumstances of each case and the jury or the referee, must determine the question in view of the consideration.

that led to the incorporation of the provision into the policy, and the necessity, that not unfrequently arises, for persons insured to leave temporarily, their dwelling-houses. In *Wait* v. *The Agricultural Fire Insurance Company* (13 Hun, 373), DYKMAN, J., says: "Dwelling houses are ordinarily used as places of abode, and the persons who occupy them are sometimes out of them and sometimes in them. Often it happens that they are left for a day and more by the occupants who are absent from them either for business or pleasure, and yet in such case no one would say the house was unoccupied, within the fair meaning of that word. In the eye of the law it would be in the possession of the person or family residing there. * * * Where shall the line be drawn? Can an outgoing tenant take time for the removal of his household goods after his family has left the house provided the time taken be reasonable? It seems but fair and just that such should be the rule, and if so, how can it be determined what is a reasonable time and whether the house has become unoccupied, better than by leaving the question to a jury under proper instructions? (See also, *Cummins* v. *The Agricultural Ins. Co.*, 67 N. Y., 260; *Whitney* v. *Black River Ins.*, *Co.*, 72 id., 117; *Woodruff* v. *Imperial Ins. Co.*, 83 id., 133; *Barry* v. *Prescott Ins. Co.*, 35 Hun, 601.)

A careful examination of the facts and authorities relating to this question, inclines us to the opinion that, under the peculiar circumstances of this case, the question of the occupancy of the house was a question which should have been submitted to the jury under proper instructions from the court.

If, however, it was properly held that the house was unoccupied when the fire occurred, yet it was in the same condition as to occupancy, when the insurance was effected, and remained so during the entire term, except that a part of it was occupied a portion of the time, by tenants, with the express consent of the defendant. If the defendant had knowledge of the fact that it was thus occupied at the time of issuing its policy, it is to be presumed that it, by mistake, omitted to express the fact in its policy, or waived the condition, or held itself estopped from setting it up, as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument. (*Short* v. *Home Ins. Co.*, 90 N. Y., 16; *Haight* v. *Continental Ins. Co.*,

92 id., 51.)   Did the defendant have knowledge that the house was unoccupied, or rather as to the precise nature of its occupancy when it issued its policy?   That its agents possessed that knowledge there can be no manner of doubt.   When the subject of this insurance was under consideration by the plaintiff and defendant's agents, they were not only informed that the house was then unoccupied, except by plaintiff's children, but were also informed that it was the intention that it should continue to be used in that manner.   They knew that there was no human being in it at the time; therefore, if the knowledge of its agents was the defendant's knowlehge, the principle of the cases cited is applicable.

It is a general principle of the law of agency, that the knowledge of the agent is the knowledge of the principle.   Crane & Mosher were the agents of the defendant, to make surveys and take applications for insurance.   For those purposes their authority was unlimited.   The policy recognized their agency, not only in the body of it, but by the indorsement upon it of their names as agents. The same rules apply to insurance companies as apply in the case of individuals, and a person who is clothed with power to act for them at all, is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority.   (Wood on Fire Ins., 624, § 383, and cases cited.)   An agent whose business it is to receive and forward to the company applications for insurance, is the agent of the company to receive a disclosure of facts, although the company privately instruct him to regard himself, in so doing, as the agent of the applicant.   (Flanders on Fire Ins., 103.) In *Patridge* v. *The Commercial Fire Insurance Company* (17 Hun, 95) it was held that the knowledge of an agent to receive applications was the knowledge of the company, and that the company was bound by his knowledge.   The case of *Broadhead* v. *Lycoming Insurance Company* (14 Hun, 452); *Chase* v. *The People's Fire Insurance Company* (Id., 456); *Van Schoick* v. *Niagara Fire Insurance Company* (68 N. Y., 434); *Bennett* v. *North British Insurance, etc., Company* (81 id., 273), and many others are to the same effect.   (See *Bennett* v. *Agricultural Ins. Co.*, 106 N. Y., 243.)

The only conflict which has existed in the authorities upon this question, has related to the effect of what is known as the " agency

clause." Some of the authorities have held that such a clause was binding upon the assured, and in such cases that the knowledge of the agent was not binding upon the company. The authorities upon that question have, however, been far from uniform. We think the knowledge of the defendant's agents must be regarded as its knowledge, and hence it must be presumed either that the defendant by mistake omitted to state in its policy that the house was unoccupied or occupied only in the manner stated to its agents by the plaintiff, or waived the provision as to occupancy, or held itself estopped from setting it up. This leaves for consideration only the question whether the defendant's consent that the house might remain unoccupied during the summer, included the time when this fire occurred. If the word summer, as used in that consent, was intended by the parties to include only the summer months of June, July and August, then it is manifest that it did not include the time when the fire occurred. But the plaintiff contends that such was not the intention of the parties. That the circumstances attending the transaction show that they intended it to include the warm season of the year, the season when the principal portion of the business of farming is carried on.

During the negotiations between the plaintiff and the defendant's agents for this insurance, it was agreed between them that the plaintiff should have consent to leave the house wholly unoccupied during the "farming season" of each year. About this there is no dispute. The agents then made an application, in the plaintiff's absence, and forwarded it to the defendant. A policy was returned containing no consent whatever. The plaintiff, with the aid of his wife, spelled out that fact. He then informed the defendant's agents of it and left the policy with them with assurance from them that the consent agreed upon should be inserted. The policy was then returned by the agents to the defendant, for the sole purpose of having the consent agreed upon inserted therein, presumably with direct information from the agents to the defendant, of the agreement between them and the plaintiff. The defendant then inserted in the policy: " Consent that the house may be left unoccupied during the summer." The defendant now insists that this consent should be so construed as to include only the summer months for the first year of the policy. If such was the intent with

which the defendant gave that consent, then it is manifest that it intended to perpetrate a fraud upon the plaintiff. It had knowledge that the agreement was that it might remain unoccupied through the "farming season" each year during the life of the policy. The plaintiff had paid the premium charged for the additional risk on a policy with that consent. If the defendant gave the consent in question, with such a fraudulent intent, its action is condemned by every principle of justice, fair dealing or common honesty. We cannot think that such was the intent.

We are of the opinion that the intent of the parties was to employ the word summer in its broadest sense, and that it was understood by both parties as being as equivalent for the words "farming season." Such a construction does no violence to the language employed, and carries into execution the agreement and understanding of the parties. We are also of the opinion that it was the intention of the parties that such consent should apply to each year covered by the policy. (*Steen* v. *Niagara Ins. Co.*, 89 N. Y., 315.) If correct in our construction of this consent, it follows that if the house was unoccupied at the time of the fire, it was within the time embraced in the defendant's consent, and hence the policy was not invalid for that reason.

From these considerations we conclude that the trial court erred in nonsuiting the plaintiff and refusing to submit the case to the jury. For this error a new trial should be granted with costs to abide the event.

FOLLETT, J., concurred. HARDIN, P. J., not sitting.

Motion for a new trial granted, with costs to abide the event.