(100 App. Div. 278)

### THIEME v. NIAGARA FIRE INS. CO.

(Supreme Court, Appellate Division, First Department.   January 6, 1905.)

1. FIRE INSURANCE—CONDITION OF POLICY—VACATION OF PREMISES.

Where plaintiff's husband, who lived in another house on the same lot, placed a bed in the insured house after the tenant vacated, and slept there five nights each week, carrying on his business on the premises during the day, the house was not "vacant and unoccupied for ten days" within the forfeiture clause of the insurance policy.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action on a policy of insurance by Elizabeth Thieme against the Niagara Fire Insurance Company.   From a judgment for plaintiff and an order denying a new trial, defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Robert Thorne, for appellant.
Charles E. Le Barbier, for respondent.

INGRAHAM, J.   The plaintiff, the owner of a dwelling house in the city of New York, procured a policy of insurance from the defendant by which the defendant agreed to insure the plaintiff against loss or damage by fire to the amount of $1,000 on a two-story frame dwelling situated on the rear of a lot on Mary street, in Westchester, New York City, for a term of three years from the 17th day of May, 1901. The complaint alleges that on or about the 5th day of July, 1901, the building was wholly destroyed by fire.   The answer of the defendant, as a defense, alleges that one of the conditions of the said policy of insurance was that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days"; and alleges that the building destroyed in fact became vacant and unoccupied, and so remained for a period of more than 10 days; and that at the time of the fire the building was then vacant and unoccupied, and had been and remained vacant and unoccupied for more than 10 days preceding the date of the fire.   Upon the trial the plaintiff's husband testified that he and his wife occupied a house upon a piece of land upon which the building that was destroyed was situated; that the building destroyed was a two-story building 25 by 25 feet, which contained living apartments; that this building had been rented prior to May, 1901, at which time the tenants moved out; that, after he moved out, the witness put a lounge in the building, and slept there to take care of the house until it was rented; that on the 3d of July, 1901, the building was rented, the tenant paying a deposit of $5, and

was to take possession within a few days; that on the night of the 3d of July the witness slept in the premises; that on the night of the 4th of July he slept in the other house; that the furniture in the house belonged to the plaintiff; that from the time that the tenants vacated the premises, in May, until the 4th of July, the witness slept in the house five or six nights a week, and sometimes the whole week; that prior to the fire there was some painting and paperhanging being done in the house; that on the night of the 4th or the morning of the 5th the house caught fire and was destroyed; that at 11 o'clock on the night of the 4th the witness went around the house, saw that everything was all right, locked up the house, and went to bed in the adjoining building; that at about half past 2 in the morning of the 5th the whole place was found to be on fire; that the witness carried on his business upon the premises, and was around the house all day; that upon no week from May until the building was destroyed did he sleep in the house less than five times a week. Other witnesses testified that the plaintiff slept in the house that was destroyed during the period that it was unrented. At the close of the testimony, counsel for the defendant moved for a direction of a verdict for the defendant, upon the ground that the testimony showed that the house was vacant and unoccupied, and so remained for more than 10 days prior to the fire. The plaintiff also moved for the direction of a verdict for the plaintiff, and, there being no request to submit the question to the jury, the court directed the jury to find a verdict for the plaintiff, to which counsel for the defendant excepted.

The policy of insurance is the standard policy, and the question is whether at the time of the fire the premises were vacant or unoccupied within the meaning of the terms of the policy. To forfeit the policy, it was required that the premises should be or become vacant or unoccupied, and so remain for 10 days. The fact that the plaintiff's husband did not sleep in the house on the night of the fire would not avoid the policy, unless the house was vacant or unoccupied, notwithstanding the fact that he was in the habit of sleeping there at least five nights a week during the period that the premises were unrented. The reasonable meaning to be given to this provision seems to me to be that a house does not become vacant or unoccupied so long as there are persons living in the house for some portion of each day. The plaintiff and her family lived in an adjoining house, and the premises in question had been rented and occupied by the tenant. When the tenant moved away, the plaintiff's husband moved into the house. He was about the premises all day, attending to his business, which was carried on there, and at night he generally slept in the house that was destroyed. This, it seems to me, was an occupation of the house within the meaning of this provision of the policy. If the plaintiff had hired a man to look out for the house and occupy it until it was rented, the mere fact that occasionally he slept away from the house would not have made it a vacant or unoccupied house which remained vacant and unoccupied for 10 days. As was said by Folger, C. J., in Herrman v. Adriatic Fire Ins. Co., 85 N. Y. 162, 39 Am. Rep. 644, "For a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely

and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage." "To occupy" is generally defined to be "to take and hold possession of; have in possession and use" (Standard Dictionary); "to take possession of; to keep in possession; to possess; to hold and use, as to occupy a house or a farm" (Imperial Dictionary). In Huber v. Manchester Fire Ins. Co., 92 Hun, 223, 36 N. Y. Supp. 873, the policy contained a provision substantially like the one now under consideration. The tenant who was in possession of the premises went away for a visit on the 24th of August, 1892, intending to stay five or six weeks. The house was locked, and the key of the front door was given to a friend who resided in the neighborhood. This friend went often into the house, but did not go every day. The house was to be painted on the 26th, 27th, and 29th of August, and paperhanging work was to be done at various subsequent times. The last time anybody was in the house was before the 7th of September, and the fire occurred on the evening of September 17th or early in the morning of September 18th. The General Term in the Fourth Department, after an examination of the authorities, held that, after the tenant left, the house was not inhabited in the ordinary way, unless other furniture was moved in, as the plaintiff's furniture was locked up; that the intention of the plaintiff to return in four or five weeks did not make an occupation during her absence according to the doctrine of the Herrman Case, as, from the time the plaintiff left on the 24th of August to the time of the fire on the 17th or 18th of September, no one was living in the house. It was said by Earl, J., in Herrman v. Merchants' Ins. Co., 81 N. Y. 184, 37 Am. Rep. 488, that a dwelling house is unoccupied when no one lives in it. The test seems, therefore, to be that a dwelling house is unoccupied when not used as a dwelling or living place for human beings; and, applying this test, can this house be said to have been unoccupied for 10 days? A member of the plaintiff's family habitually slept there; the house adjoined the plaintiff's residence; the plaintiff's husband conducted his business upon the premises, and was in or about the house insured most of the time. Temporarily there was no tenant, although the premises had been rented before the fire.

The clause in question contemplates that the building might be one which was rented, and usually in the occupation of a tenant; but there is no provision inserted that in such case, where the premises remained unrented, the policy should be void; but the condition is, whether intended for occupancy by the owner or by a tenant, that, if the premises became either vacant or unoccupied, the policy should be void. It is not claimed that the premises were vacant, and I do not think that they became unoccupied so long as a human being lived in the house, using it to sleep in, or for such other purposes as a dwelling is habitually used. Now the plaintiff recognized the necessity of some one being actually in the house at night to protect it, and for that purpose her husband habitually slept there while unrented; and it seems to me that this was an occupation of the house within the meaning of this clause of the policy.

There are cases cited by the learned counsel for the defendant from other jurisdictions, but generally the terms of the policy are different

from those of the policy in question, and, while these cases have been examined, I do not think they would justify a reversal of this judgment.

I think the judgment and order appealed from should be affirmed, with costs.

PATTERSON and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the opinion of Mr. Justice INGRAHAM. The building insured, at the time it was consumed by fire, was, I think, both vacant and unoccupied, which, under a provision of the policy, prevented a recovery. This provision is as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

The policy was issued on the 21st of May, 1901, and covered a two-story frame dwelling, which, at that time, was occupied by a tenant who shortly thereafter removed therefrom, and from that time until the fire occurred—about 2 o'clock on the morning of the 5th of July, 1901—there was nothing in the building except the body of a carriage stored on the ground floor, and a couch and one chair in one of the rooms on the second floor. This couch and chair were put into this room by plaintiff's husband after the tenant vacated the building, and this is what is termed, in the prevailing opinion, as the plaintiff's husband "moving in." After the tenant vacated, plaintiff posted conspicuously on the building, or some part of it, the words "To let," and a day or two prior to the fire the building had been relet, but the tenant had not "moved in." The only pretense that the building was occupied was the fact that the plaintiff's husband slept in it several nights each week—just how many he was unable to say, as is clearly evidenced by the following question, which was put to him on cross-examination, and his answer to it:

"Q. Isn't it a fact that you went there and slept a night or so, but you do not remember just how many nights you slept there? A. That is right."

He did not sleep in the building the night the fire occurred; on the contrary, slept in the house which stood on the adjoining lot, occupied by himself and wife. Nor did he make any inspection of the building the night it burned, as stated in the prevailing opinion. He testified:

"And the last night I slept there was July 3, 1901. On that night I slept in the house. Between the 4th and 5th there happened to be a fire in that little house, * * * which was the house on which my wife had this policy of insurance. About 11 o'clock I went all around the house where I am living now, and I saw that everything was all right, and then * * * I went to bed. * * *"

The appellant contends that the building was both vacant and unoccupied, and I am of the opinion that the contention is correct. The words "vacant" and "unoccupied," in the sense in which they

are here used, are not synonymous.   Herrman v. Adriatic Fire Ins. Co., 85 N. Y. 162, 39 Am. Rep. 644.   In determining the sense of these words, regard, of course, must be had to the purpose for which the building was adapted.   It was a dwelling house, and it was vacant unless it contained such articles of furniture as are usually to be found in a dwelling house.   It did not contain such articles.   Martin v. Rochester Fire Ins. Co., 86 Hun, 35, 33 N. Y. Supp. 404; Litch v. North British Fire Ins. Co., 136 Mass. 491. It cannot be that the body of a wagon upon the ground floor and a couch and a chair in one of the rooms on an upper floor are sufficient to prevent the building being "vacant," if effect is to be given to this word in the sense in which it is used in the policy.

It was also unoccupied.   "For a dwelling house to be in a state of occupation," says Judge Folger in Herrman v. Adriatic Fire Ins. Co., supra, "there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage."   And, in the language of Judge Earl in Herrman v. Merchants' Ins. Co., 81 N. Y. 184, 37 Am. Rep. 488, "a dwelling house is unoccupied when no one lives therein."   It is not sufficient, therefore, that there were in it a few articles of furniture, or that plaintiff's husband occasionally slept there.   He neither lived in this building, nor was it his customary place of abode. Couch v. Farmers' Fire Ins. Co., 64 App. Div. 367, 72 N. Y. Supp. 95; Barry v. Prescott Fire Ins. Co., 35 Hun, 601; Huber v. Manchester Fire Ins. Co., 92 Hun, 223, 36 N. Y. Supp. 873; Poor v. Humboldt Fire Ins. Co., 125 Mass. 274, 28 Am. Rep. 228; Agricultural Ins. Co. v. Hamilton, 82 Md. 88, 33 Atl. 429, 30 L. R. A. 633, 51 Am. St. Rep. 457; 13 Am. & Eng. Enc. of Law (2d Ed.) 274, and cases cited.   If effect be given to these authorities, then the building had not been occupied for more than 10 days, which prevented a recovery.

I think the judgment should be reversed and a new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J., concurs.