HATTIE S. WILLIAMS and ELLA DEYO, Respondents, *v.* THE
PIONEER CO-OPERATIVE FIRE INSURANCE COMPANY,
Appellant.

Third Department, July 1, 1918.

Insurance — fire insurance — when building unoccupied as family
residence within meaning of policy — remedy of mortgagee after
breach of policy by mortgagor rendering it void.

Where a tenant moved his family from insured property to another house
several miles distant, taking with him part of his household furniture
and placing a portion of the remainder in a room which he locked and
before leaving closed the windows and shutters of the house and nailed
them and made an arrangement with his son-in-law, who lived near,
to look after the place, and said son-in-law visited the premises every
day or two and during the week preceding a fire the tenant and his wife
went to the house but during said period were staying at his son-in-law's
house, a mile and a quarter distant, neither the acts of the son-in-
law or of the tenant constituted the house " a family residence " within
the meaning of a policy of fire insurance providing that said policy " shall
be void * * * if a building herein described * * * be or

become vacant or unoccupied and so remain for ten days," and hence the building must be held to have been unoccupied for a period of more than ten days preceding the fire, so as to preclude a recovery under the policy.

There being no contract between a mortgagee to whom the loss if any was first payable and the insurer, contained in or annexed to the policy constituting a mortgagee clause, there can be no recovery by her against the insurer and she must look to the mortgagor and to her lien upon the real estate for the payment of her claim.

APPEAL by the defendant, The Pioneer Co-operative Fire Insurance Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Ulster on the 27th day of October, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of November, 1917, denying defendant's motion for a new trial made upon the minutes.

*William Rooney,* for the appellant.

*Traver & Murray* [*Amos Van Etten* of counsel], for the respondents.

*Brown & Brown, Amicus Curiæ,* for the Otsego Mutual Fire Insurance Company.

LYON, J.:

The judgment appealed from was recovered in an action upon a policy of fire insurance. A condition therein provided: " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The policy also provided as one of the stipulations and conditions upon which it was made and accepted: " If the dwelling be or becomes vacant or unoccupied, except in accordance with the provisions of this policy, the entire policy is void." The vital question presented to the trial court was whether the condition relating to occupancy was breached, and the policy thereby avoided.

The policy was issued November 1, 1916, in the sum of $1,175, for the term of three years " on two story shingle

roof frame building  *  *  *  while occupied as a private family residence,  *  *  *  on barn,  *  *  *  on two story frame building situate in rear of dwelling and occupied as cook house and annex.  *  *  *  All situate on the farm owned by assured while occupied by tenant  *  *  *." All the buildings were destroyed by fire December seventeenth following.  At the time the policy was issued the buildings were occupied by a tenant under a lease executed the preceding spring for the term of one year with the privilege of three.  About the middle of November the tenant moved his family, which consisted of himself, his wife and son, from the insured property to a house near Montgomery, Orange county, N. Y., a distance of about twenty-four miles, intending, as the tenant testified, to move back in the spring.  Before leaving, the tenant took up the carpets downstairs, and placed some of his household furnishings in a locked room upstairs.  He took with him a stove, bedding and other household furnishings, in all two two-horse loads.  He testified that the furniture which he took belonged to his son, but he also testified that he used the furniture in the house into which he moved, He sold his team, as he was not able, he said, to work any horses.  He left downstairs in the house a cabinet organ, a stove, a bed and chairs.  He left in the barn hay and farming machinery and utensils.  Before leaving he closed the windows and shutters of the house and nailed them.  He also nailed a board across the barn door.  He made an arrangement with his son-in-law, who lived about a mile and a quarter away, to look after the place.  The son-in-law went to the premises every day or two or three, going around the buildings and into the house, and slept in the house two nights.  About a week before the fire the tenant and his wife came to the son-in-law's house.  The occasion of their visit there seems to have been the anticipated birth of a child of their daughter. During the week preceding the fire the tenant and his wife went once together to the house; two or three times the tenant went there alone, and he slept there alone two nights.  During the time the son-in-law was looking after the premises he was working for the Ontario Railroad Company, living at his own house and taking his meals there.  During the week preceding the fire the tenant and his wife were staying at the

son-in-law's house and taking their meals there. Whether between the time when the tenant moved to Orange county and the time of the fire a period of ten days elapsed without either the son-in-law or the tenant sleeping in the house, does not definitely appear. We may, therefore, consider that such period did not elapse. While the evidence was more or less conflicting, we must assume in passing upon this appeal that the jury in reaching its verdict was controlled by the evidence most favorable to the insured which was as above stated.

Under the authorities we think that neither the acts of the son-in-law or of the tenant constituted the house a "family residence" within the meaning of the policy, and hence that the building must be held to have been unoccupied for a period of more than ten days preceding the fire, and the non-suit asked should have been granted. In the case of *Herrman v. Adriatic Fire Ins. Co.* (85 N. Y. 162) the house destroyed constituted the plaintiff's summer residence where he and his family resided during the summer and part of the fall only. A smaller dwelling on the plaintiff's farm was occupied the entire year by a farmer in plaintiff's employ and his family and a gardener. In November the plaintiff and his family returned to his city residence for the winter, leaving in the house all his furniture and the summer clothing of himself and family. The house, which could be seen from the farm house, was left in charge of the farmer, and he or some member of his family as directed by the plaintiff went through the house regularly once a week, opened the windows for the purpose of ventilation, closed and bolted them, and after firmly securing the house left it until the ensuing week. The plaintiff, generally in company with his wife, visited the premises once a fortnight to see that the farmer took good care of them. It was his habit on these visits of opening the main dwelling, going through the rooms and lunching therein, but no member of plaintiff's family passed a night there during the winter preceding the fire. The usual visit of the plaintiff and his wife occurred about three days before the fire, which happened in April. The court in rendering judgment in favor of the defendant made the following statements which seem so applicable to the case at bar that we quote them: "The fortnightly visits of the plaintiff and his wife to it were not the occupation that is

meant when a dwelling house is spoken of.   The weekly tours of inspection of the farmer and members of his family living on the grounds, and the supervision of it from his own house, were more useful, but they fell short of being occupation of it. The term 'unoccupied,' used in the policy, is entitled to a sense adapted to the occasion of its use, and the subject-matter to which it is applied.   *   *   *   We have already said enough to show our opinion that, for a dwelling house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage."   In passing upon the claim that the words " vacant " and " unoccupied " should be treated as synonymous, the court said:   " With those animate far away from it, but with those inanimate still in it, it would not be vacant, for it would not be empty and void.   *   *   *   But when the phrase ' vacant or unoccupied ' is applied to a dwelling house, plainly there is a purpose — an attempt to give a different statement of the condition thereof; by the first word, as an empty house, by the second word, as one in which there is not habitually the presence of human beings."   This distinction in the meaning of the two words is also pointed out in *Herrman* v. *Merchants' Ins. Co.* (81 N. Y. 184).

In *Halpin* v. *Phenix Ins. Co.* (118 N. Y. 165, 173) the court court said that " while a dwelling house will not be regarded as occupied unless it is the home or dwelling place of some person, yet temporary absence, leaving the property for a short period unoccupied will not be regarded as a breach of the condition, while absence for a fixed definite period, even with the intention to return and occupy the property will violate the condition and render the policy void."   In *Halpin* v. *Ætna Fire Ins. Co.* (120 N. Y. 70) it was held that where a factory had become idle, leaving it in charge of a caretaker who had the keys and visited the premises three or four times a week, and who obtained the services of a neighbor living about fifteen feet from the building who watched the building when he was at home, and whose wife looked after it day times while he was away at work, was unoccupied under a similar clause in a policy.   The cases of *Huber* v. *Manchester Fire Assurance Co.* (92 Hun, 223) and *Couch* v. *Farmers Fire Ins.*

*Co.* (64 App. Div. 367) follow the case of *Herrman* v. *Adriatic Fire Ins. Co.* (*supra*).

It was held in *O'Brien* v. *Prescott Ins. Co.* (134 N. Y. 28): " The stipulation in regard to occupancy was an express warranty, and, unless it was either performed or waived, the policy became void."

As to the plaintiff Deyo, mortgagee, to whom the loss, if any, was first payable, there having been a breach by the assured in a condition of the policy which rendered it void, and there being no contract between her and the insurer, contained in or annexed to the policy constituting a mortgagee clause, there can be no recovery by her against the insurer, but she must look to the mortgagor and to her lien upon the real estate for the payment of her claim. (*Moore* v. *Hanover Fire Ins. Co.*, 141 N. Y. 219; *Rosenstein* v. *Traders' Ins. Co.*, 79 App. Div. 481.)

The respondents claim that the appellant, by reason of certain requests made by it at the close of the charge, waived any rights obtained by it under the exceptions to the refusal of the court to dismiss the complaint at the close of the evidence. We do not think this claim of the respondents well founded.

The judgment and order appealed from should be reversed, with costs to the appellant, and the complaint dismissed upon the merits, with costs.

All concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.