John C. Wheeler,
Off. Ref. This action is upon a policy of fire insurance in which plaintiffs seek to recover damages resulting from the destruction by fire of two barns located on their farm in the Town of Starkey, Yates County.
The policy contained a condition which provided ‘ ‘ this company shall not be liable for loss occurring: * * * (b.) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days.” The sole issue is presented by defendants’ allegation that the barns were vacant or unoccupied in violation of the above condition. The basis of this contention is that the alleged nonoccupancy of plaintiffs’ dwelling house, also located on the farm, was sufficient to forfeit the policy as to all the buildings insured, regardless of whether they were in fact vacant or unoccupied. This depends upon whether the contract of insurance was entire or severable, whether a condition broken as to a part of the whole subject of insurance was thereby broken as to each subject of insurance.
The material facts are undisputed and are found as follows: The farm, containing 115 acres of land, has been owned by plaintiffs Roof and members of the Roof family since 1876. The policy in question was issued October 1, 1957, for a term of five years, on a brick dwelling for the amount of $3,000, at the rate of 51 cents, household and personal property for $1,000, at the rate of 51 cents, a frame wood barn “No. 4” for $6,000, at the rate of $1.15, and a frame wood barn “ No. 5 ” for $2,000, at the rate of $1.15. The two barns, but not the dwelling, were destroyed by fire April 12, 1959. In the Spring of 1957 plaintiffs discontinued the operation of the farm and leased the farm land and buildings to a neighbor, Lawrence Smith, for an annual rental of $750 on a year to year basis, but plaintiffs retained the dwelling, in which they continued to reside with their family. Smith entered into possession of the lands and barns in question prior to the date of the policy and retained possession thereof until and after the date of the fire. He worked the farm, harvested the crops and used the barns for storage of hay. During the Winter of 1958-1959, Smith stored in the barns some 70 tons of hay and certain farm machinery. At the time of the fire the larger barn (No. 4) contained 20 tons of hay and the smaller barn (No. 5) 3 tons of hay. The tenant went to the barns approximately twice each week for the purpose of obtaining hay for his livestock. From *714 the date of the policy until the fire, the barns were used by the tenant for the usual and customary purposes of a farm barn. Defendants were aware of this use as the policy contained a condition that the barns were to contain storage of baled hay or straw only.
In November, 1958, the plaintiffs, Mr. and Mrs. Roof, were summoned to the home of Mrs. Roof’s father, a man 92 years of age, who was seriously ill. The father’s home was located some 25 miles from the Roof dwelling. Plaintiffs and their children went to the father’s home and cared for the old gentleman until his death, when they returned home. This was an emergency which the Roofs believed was not to be unduly prolonged ; they did not intend to vacate their home for any definite period. They took nothing with them except their clothing; all their furniture and other personal property remained in the dwelling, also their Winter supply of potatoes. They even left the family dog in the woodshed of the dwelling until January of 1959. Upon leaving they disconnected the electric water pump and furnace to avoid freezing, also the telephone, and later, about January 1, 1959, they had the electricity turned off. However, the gas used for heating and cooking was not discontinued and water was obtainable from an outside pump. From the time the plaintiffs left, they returned to the dwelling on numerous occasions. Mr. Roof slept in the house about one night each month, and visited the house on the average of once a week. Mrs. Roof visited the house “ one or two times a week”. Likewise, plaintiffs’ adult daughter visited the dwelling and slept there between 8 or 10 times during the Winter of 1959, the last time during the week end of February 20, just prior to her marriage, and much less than 60 days prior to the fire.
Under the facts of this case as above outlined and found, it seems clear to me that the principle of severability must be applied to this policy. (Merrill v. Agricultural Ins. Co., 73 N. Y. 452 [1878] ; Herrman v. Adriatic Fire Ins. Co., 85 N. Y. 162 [1881]; Donley v. Glens Falls Ins. Co., 184 N. Y. 107 [1906]; 45 C. J. S., Insurance, § 546, p. 286; § 556, subd. d., p. 307; 4 Couch, Cyclopedia of Insurance Law, § 970m.)
The opinions in both the Merrill and the Herrman cases were written by Judge Folgeb, Merrill being considered a leading case. There, the condition was to the effect that if the insured property was encumbered by mortgage or otherwise, the policy should be void. The insured buildings became incumbered but not the personal property contained therein. The *715 court rejected defendant’s contention “ That not only was the policy voided as to the buildings insured, but as to the chattel property as well.” Recovery was permitted as to the unincumbered chattels, but denied as to the buildings. The basis for the decision in the Merrill case is stated in the opinion as follows (p. 465): “ though there may have been some conduct of the insured as to some of the property, not evil in itself, but working a breach of a condition in its letter, the effect of that breach may be confined to the insurance upon that property, the contract as to that be held avoided, and as to the other subjects held valid.”
The policy in the Herrman case (85 N. Y. 162, 170, supra) contained a condition “if the above-mentioned premises shall * * * become vacant or unoccupied * * * this policy shall be void.” There were several kinds and pieces of property insured and separately described in the policy, the whole making up a “well-to-do proprietor’s rural establishment.” The Summer home and certain outhouses appurtenant thereto were destroyed. Recovery was refused upon ample proof that the dwelling was not occupied within the meaning of the policy. Plaintiff was contending that no forfeiture resulted inasmuch as the farmhouse on the property was, in fact, occupied by the caretaker and, therefore, and not withstanding the nonoccupancy of the Summer dwelling, the condition of the policy would be saved. This contention was rejected upon the ground that (p. 170): “ This would be to make the contract of insurance entire and indivisible; and to affect all the property insured with any act of the insured, which, as to any item thereof, worked a breach of any condition. This is not the true, just, or equitable construction.” Judge Folger went on to note that the principle enunciated was the same as that set forth in the earlier Merrill case.
The principle involved in these two important cases was confirmed in Donley v. Glens Falls Ins. Co. (184 N. Y. 107, 111, supra). In this case, Judge Vaitu succinctly stated the applicable law as follows: 1 ‘ Whatever our views might be if the question were new, we regard it as settled that where, by the same policy, different classes of property, each separately valued, are insured for distinct amounts, even if the premium for the aggregate amount is paid in gross, the contract is severable and a breach of warranty as to one subject of insurance only does not affect the policy as to the others, unless it clearly appears that such was the intention. * # * Some
early cases holding the contrary doctrine are no longer followed in this state ”.
*716 Notwithstanding the conclusions reached in the above-cited cases, defendants adhere to the theory that the occupancy of a dwelling on a farm determines the character of the occupancy of barns and other buildings used in connection with it, within the meaning of a fire policy. This view is not without support in other jurisdictions (51 A. L. R. 2d 1369; Continental Ins. Co. of N. Y. v. Dunning, 249 Ky. 234; Hartshorne v. Agriculture Ins. Co., 50 N. J. L. 427). The text appearing in volume 51 of the American Law Reports, Annotated, indicates “ a tendency to hold that occupancy or unoccupancy of a dwelling house is the controlling factor”. In the Continental Ins. Co. case it was held (p. 241) that “ occupancy of a dwelling house determines the character of the occupancy of the barn and other outbuildings used in connection with it.” (Emphasis supplied.) In Hartshorne the policy condition provided that if any “ dwelling house ” insured should cease to be occupied, the policy would be void. It was there held (p. 431) that the contract was not severable, for the reason that ‘1 a farm, with its dwelling and out-buildings, constitutes a single establishment”.
Obviously, these cases are distinguishable from the factual situation in the instant case, as the barns destroyed on the plaintiffs ’ property were not being used in connection with the dwelling so as to constitute a single establishment, nor was there any provision that the policy would become void if the dwelling should become unoccupied. Like distinctions are also applicable to Williams v. Pioneer Co-op. Fire Ins. Co. (183 App. Div. 826) relied upon by defendants. In that case the policy provided an additional condition ‘ ‘ If the dwelling be or becomes vacant or unoccupied * * * the entire policy is void.” Because of the nonoccupancy of the Williams ’ dwelling the policy was declared to be void as to all the buildings destroyed. The doctrine of severability was not raised or discussed in the opinion and, apparently, there was no basis for its applicability.
Having reached the conclusion that the policy in question was severable, it follows that the claimed nonoccupancy of the dwelling which was not destroyed becomes immaterial. I have no difficulty in finding as a fact that the subject barns destroyed were not vacant or unoccupied in violation of the policy condition. Conditions in a policy relating to nonoccupancy of insured premises are to be construed with reference to the species of property insured and the use contemplated for the particular type of property. (Ann. 158 A. L. R. 897; Whitney v. Black River Ins. Co., 72 N. Y. 117.)
*717 In view of the requests to find, it becomes appropriate, but not necessary, to determine whether plaintiffs’ dwelling became vacant or unoccupied within the purview of the policy. I have already set forth the essential facts which are pertinent to the particular subject. The question is not free from doubt. There are many definitions of nonoccupancy and the decisions are not ‘1 always in harmony where the facts are substantially the same.” (45 C. J. S., Insurance, § 556, subd. b.) Judge Forger in Herrman v. Adriatic Fire Ins. Co. (85 N. Y. 162, 169, supra) has set forth concisely an adequate guide for determining this troublesome question: “ We have already said enough to show our opinion that, for a dwelling-house to be in a state of occupation, there must be in it the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage.” Applying this general definition to the particular facts of this case, and bearing in mind that in construing promissory warranties in insurance policies, in case of doubt, the policy will be strictly construed so as to avoid a forfeiture, I find that the subject dwelling was not vacant or unoccupied in violation of the policy condition.
The above considerations lead to the conclusion that plaintiffs are entitled to judgment for the sum of $8,000, with interest from April 12, 1959, together with costs and disbursements of this action. The requests to find submitted by the respective parties have been passed upon and are to be filed with the Clerk of the court. The above constitutes the decision of the court in accordance with section 440 of the Civil Practice Act. Judgment may enter accordingly.