Alfred M. Lama, J.
This controversy was submitted for resolution upon the following statement of agreed facts:
That Sophia Feinstein, the plaintiff, in the above action owned the house known as 243 Evergreen Street, Selden, New York, solely and by a full covenant and warranty deed.
That for valid and full consideration made by the plaintiff to the defendant, Reliance Insurance Company, insurance policy No. FF 3 29 57 31 was issued and was in effect on November 21, 1969 and is submitted herewith.
That on November 21, 1969 the said house was vandalized. Said notification was made to the police and sufficient notice was made to the defendant insurance company who hereby waives late notice or non-notice.
The plaintiff purchased the house in December, 1968 so that she could live near her son, Martin Feinstein, in Selden, New York, whose property abutted the subject premises.
The house was in a state of disrepair when purchased, and the plaintiff and her son attempted to rehabilitate same. The plaintiff spent approximately $4,000 not including their labor and put in a new bathroom, new kitchen, a completely new heating system, windows, storms and screens, repaired the roof and did various other work on the house. Said work was done on weekends and vacations.
Sometime in July or August, 1969, Martin Feinstein, the son, decided to move because of a dispute with a neighbor, and the plaintiff then decided to sell her home as well. In fact, the plaintiff sold her home in January, 1970. Mr. Feinstein has also sold his home and no longer lives where he did in November, 1969.
The plaintiff maintained a residence in the State of New Jersey for the entire time in this statement of facts but she *821 spent her vacations, holidays, and approximately three weekends a month at the subject premises. She slept there, ate there and worked there. She had furniture on the premises, a cot to sleep on, table and chair, easy chair, radio, kitchen utensils, towels, sheets and blankets and various other paraphernalia.
The last time the plaintiff was at the house was the weekend before November 21, 1969 and she spent at least three weekends there in the 30 days prior to November 21, 1969.
It is agreed that as a result of the vandalism the total damage to the plaintiff amounted to $2,208.19.
Insurance is a system for the distribution of the risk of certain fortuitous events. To enable the insurer to calculate the premiums necessary to pay claims a careful selection and estimation of risk must be made. In part exclusion clauses represent the insurer’s attempt to delimit and guard against enhancement of the probability of occurrence of an insured event. Experience shows that the hazard of vandalism is increased by vacancy or unoccupancy of a dwelling, since the absence of furnishing and human occupants makes a residence a more inviting target for vandals. The issue presented is whether the exclusion clause contained in the instant policy is to be given effect under the circumstances surrounding the loss sustained by the plaintiff.
It is conceded by both parties that the terms "vacant” and "unoccupied” are not generally considered synonymous, since "vacant” means without inanimate objects, while "unoccupied” refers to the absence of animate occupants. Unlike most insurance policies, which refer to both of the above terms, the contract between these parties only excludes from coverage any loss occasioned by vandalism "if the described building(s) had been vacant beyond a period of 30 consecutive days immediately preceding the loss” (emphasis supplied). Thus the evidence of occupancy by the plaintiff and her family recited in the agreed facts has no bearing on the applicability of the exclusion clause.
Based on the submitted facts, while it appears doubtful that the plaintiff’s residence was occupied during the crucial period preceding the loss in question, the court is satisfied that it was not vacant.
It has been suggested that conditions in a policy relating to nonoccupancy of insured premises are to be construed with reference to the species of property insured and the use *822 contemplated for the particular property. (Roof v New York Federated Underwriters, 25 Misc 2d 712.) In keeping with this principle the nonoccupancy clause in an insurance policy covering a factory has been held to have been breached by occupancy of the premises as a storehouse. (Nurnberg v Citizens Cas. Co. of N. Y., 18 AD2d 650, affd 13 NY2d 681.)
The insurance company urges that a similar use-oriented rule of construction should be applied to the term "vacant” and this position has gained limited judicial approval. Thus it has been held that a dwelling house used only for the storage of farming implements is vacant. (Martin v Rochester German Ins. Co., 86 Hun 35.) However, the cases construing either word rely on objective criteria in determining whether premises are unoccupied and vacant, and do not support defendant’s further contention that the application of those terms depends on the insured’s intention. While it is true that the use contemplated at the time the policy in question was issued was as a residence for the plaintiff it does not follow that the mere change of that intention without the concurrent removal of the numerous indices of habitation will render the insured premises vacant. s
Accordingly, the court finds in favor of the plaintiff for the full amount demanded.